**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

MICHAEL FAULK,                                )
                                             )
Plaintiff,                                    )
                                             )
v.                                            )          Cause No.:    4:18-cv-308
                                             )
CITY OF SAINT LOUIS, MISSOURI,    et al.      )
                                             )
Defendants                                    )


**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

COMES NOW Plaintiff, Michael Faulk ("Plaintiff"), and submits this Response in Opposition to the Motion to Dismiss (ECF No. 55) and accompanying Memorandum (ECF No. 59) filed by individual Defendants Col. Gerald Leyshock, Lt. Scott Boyher, Lt. Timothy Sachs, Sgt. Randy Jemerson, Sgt. Matthew Karnowski, and Sgt. Brian Rossomanno, (together, "Supervisory Defendants") and Officer Andrew Wismar (along with Supervisory Defendants, "Individual Defendants").

**INTRODUCTION**

On the night of September 17, 2017, Plaintiff Michael Faulk, a St. Louis Post-Dispatch reporter, was reporting on protests against police violence in the St. Louis area when he was surrounded by officers of the St. Louis Metropolitan Police Department ("SLMPD"), pepper sprayed, assaulted, and arrested (Plaintiff's Third Amended Complaint, ("Complaint"), (ECF No. 52-7, ¶ 1). This incident was not isolated. SLMPD had been involved in at least two federal lawsuits involving similar facts, in the three years prior to their violation of Mr. Faulk's

constitutional rights (ECF No. 54-2, Temporary Restraining Order in *Templeton v. Dotson*, No. 4:14-cv-02019, at \*3 (E.D. Mo. Dec. 11, 2014); ECF No. 52-6, Memorandum and Order of Preliminary Injunction, *Ahmad v. St. Louis*, No. 4:17-cv-02455 (E.D. Mo. Nov. 15, 2017)).

Those prior lawsuits specifically related to the City police department's use of excessive force against citizens peacefully exercising their First Amendment rights and its practice of arresting people without probable cause. Despite a temporary restraining order and consent decree in one case, and a preliminary injunction in another, the SLMPD continued to indiscriminately use chemical agents against peaceful, non-criminal protestors without warning (ECF No. 52-7, ¶¶ 34-37).

This action was filed after Mr. Faulk's assault and unlawful arrest by the SLMPD on September 17, 2017. Pending before the Court is a Motion to Dismiss filed by the Supervisory Defendants alleging Mr. Faulk has failed to sufficiently plead seven of his claims and that they are entitled to dismissal based on the intracorporate conspiracy doctrine and qualified immunity (ECF No. 54).

The Court should deny Defendants' Motion to Dismiss because Mr. Faulk has pled sufficient facts, including the facts relating to prior litigation discussed above, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's Complaint contains ample factual allegations which "raise a right to relief above the speculative level" for each count and as to each Defendant. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Defendants ignore key factual allegations in their Motion to Dismiss, including but not limited to the Complaint's repeated references to Defendants' own sworn statements attesting to their personal involvement in planning, ordering, and supervising the constitutional violations in the action.

Despite Defendants' conclusory claim that Plaintiff failed to make sufficient allegations, Plaintiff's Complaint made many specific allegations showing that the Supervisory Defendants planned, ordered, and supervised the violation of Mr. Faulk's constitutional rights. Further, the vast majority of these claims were based on the Defendants' own sworn testimony in a hearing in this District.

## STATEMENT OF FACTS

Mr. Faulk made the following specific claims about each of the Supervisory Defendants:

On the night of September 17, 2017, Plaintiff Michael Faulk, an award-winning journalist working for the St. Louis Post-Dispatch, was reporting on protests against police violence in the St. Louis area when he was surrounded by officers of the St. Louis Metropolitan Police Department, pepper sprayed, assaulted, and arrested (ECF No. 52-7, ¶ 1). Mr. Faulk had been covering the wave of protests following the acquittal of former SLMPD Officer Jason Stockley for killing Anthony Lamar Smith. (*Id*. at ¶¶ 1, 121, 125-27). Despite showing police officers his press credentials, Mr. Faulk was surrounded by police, tackled, struck with a baton, and pepper sprayed in the face from less than two feet away while being held down by police officers.  (ECF No. 52-7, ¶¶ 128, 152-157).

Lieutenant Colonel **Gerald Leyshock** was the incident commander during the events of September 17, 2017 (ECF No. 52-7, ¶¶ 12, 42). Defendant Leyshock approved Defendant Sachs's plan to restrict movement of individuals attempting to leave the vicinity of Washington Avenue and Tucker Boulevard and to arrest everyone present. (*Id*. at ¶ 52). Defendant Leyshock directed Defendant Rossomanno to issue a dispersal order (ECF No. 52-5, Declaration of Rossomanno ¶ 15). Defendants Leyshock, along with Defendants Sachs, Jemerson, and Rossomanno, conspired to design and implement the illegal kettling plan, with the intent to unlawfully arrest and use excessive force against Plaintiff (ECF No. 52-7, ¶ 216). Defendant Sachs testified that he and

3

Defendant Leyshock decided to effectuate a mass arrest at Washington and Tucker around 10:00 PM, while Defendants Sachs and Leyshock were several blocks away (ECF No. 52-6 at 9). Defendant Leyshock's reason for arresting peacefully assembled citizens and mere passersby was that he did not want to "allow people back into downtown" because he was worried about property damage. (*Id*.) SLMPD officers, under Defendant Leyshock's command, surrounded Downtown residents, business patrons, protestors, observers, and members of the press, including Mr. Faulk, cutting off all routes of egress - including via any sidewalk - and prohibited the people trapped inside from leaving. (ECF No. 52-7, ¶ 64). Defendant Leyshock also failed to prevent officers from engaging in conduct violative of Mr. Faulk's civil rights and to discipline officers when they engaged in such conduct. (*Id*. at ¶ 120).

Lieutenant **Scott Boyher** was on the ground supervising SLMPD officers during the events of September 17, 2017. (ECF No. 52-7, ¶ 13). Defendant Boyher directed officers who were carrying bicycles to form a line extending across all of the street and sidewalk on Washington Avenue one half block east of Tucker Boulevard. (*Id*. at ¶¶ 61-62). This line of officers carrying bicycles approached the intersection of Washington Avenue and Tucker Boulevard. (*Id*. at ¶ 63). Under the direction of Defendant Boyher, the bicycle officers began to aggressively jab at citizens using their bicycles as battering rams. (*Id*. at ¶¶ 76-77). Defendant Boyher joined the conspiracy with Defendants Leyshock, Sachs, Jemerson, and Rossomanno when he directed officers under his control and supervision to execute their illegal kettling plan, with the intent to unlawfully arrest and use excessive force on Plaintiff. (*Id*. at ¶ 217). According to his own testimony, Defendant Boyher directed the officers under his command to use force against the peacefully assembled people. (*Id*. at ¶ 77). Subsequently, Defendant Boyher supervised the unlawful arrests of some of these individuals. (*Id*).

Lieutenant **Timothy Sachs** was in direct command of SLMPD officers during the events of September 17, 2017. (ECF No. 52-7, ¶ 43). Defendant Sachs was in charge of deploying tactical units. (ECF No. 52-6 at 3). According to his own testimony, Defendant Sachs was unaware of any property damage occurring downtown after 8:30 PM. (*Id*. at 9). Even with this understanding that there was no threat to property or safety, Defendant Sachs came up with the plan to arrest everyone present, and presented the plan to Defendant Leyshock. (ECF No. 52-7, ¶¶ 52, 114; ECF No. 52-6 at 9-10). Defendant Sachs testified that he and Defendant Leyshock decided to effectuate a mass arrest at Washington and Tucker around 10:00 PM, while Defendants Sachs and Leyshock were several blocks away. (ECF No. 52-6 at 9).

Sergeant **Randy Jemerson** was on the ground supervising SLMPD officers during the events of September 17, 2017. (ECF No. 52-7, ¶ 15). Defendant Jemerson is a supervisor with the SLMPD's Civil Disobedience Team, a team tasked with handling protests and incidents of civil unrest. (*Id*.). Defendant Jemerson directed the Civil Disobedience Team, under his command, to the intersection of Washington and Tucker. (*Id*. at ¶ 47). Defendant Jemerson, along with Defendants Leyshock, Sachs, and Rossomanno, conspired to design and implement the illegal kettling plan, with the intent to unlawfully arrest and use excessive force against Plaintiff. (*Id*. at ¶ 216).

Sergeant **Matthew Karnowski** was on the ground supervising SLMPD officers during the events of September 17, 2017. (ECF No. 52-7, ¶ 16). Defendant Karnowski declared the protest that day an "unlawful assembly", which SLMPD used as a predicate to the arrests and use of chemical agents. (*Id*. at ¶ 50). Defendant Karnowski and officers under his command "'push[ed] protestors north' toward Washington Avenue and Tucker Boulevard." (*Id*.). Defendant Karnowski directed officers under his command to use force against the peacefully assembled people. (*Id*. at ¶ 77). Specifically, under the direction of Defendant Karnowski, the bicycle officers began to

5

aggressively jab at the individuals using their bicycles as battering rams. (*Id*. at ¶¶ 76-77). Subsequently, Defendant Karnowski supervised the unlawful arrests of some of these individuals. (*Id*. at ¶ 77). Defendant Karnowski joined the conspiracy with Defendants Leyshock, Sachs, Jemerson, and Rossomanno when he directed officers under his control and supervision to execute their illegal kettling plan, with the intent to unlawfully arrest and use excessive force on Plaintiff. (*Id*. at ¶ 217).

Sergeant **Brian Rossomanno** was on the ground supervising SLMPD officers during the events of September 17, 2017. (ECF No. 52-7, ¶ 17). Defendant Rossomanno is a supervisor with the SLMPD's Civil Disobedience Team, a team tasked with handling protests and incidents of civil unrest. (*Id*.). Defendant  Rossomanno directed individuals to the intersection of Washington and Tucker. (*Id*. at ¶ 47). Defendant Rossomanno directed the officers' unlawful actions in continued violation of citizens' civil rights. (*Id*.). At the direction of Defendant Leyshock, Defendant Rossomanno gave a vague dispersal order indicating that "anyone who remained in the area" would be "subject to arrest and potentially subject to the deployment of chemical munitions" leaving citizens confused about how to comply (*id*. at ¶ 113; ECF No. 52-5, Declaration of Rossomanno ¶ 15). This order did not specify how far individuals had to go to comply with the directive. (ECF No. 52-6 at 8). Defendant Rossomanno also failed to prevent officers from engaging in conduct violative of Mr. Faulk's civil rights and to discipline officers when they engaged in such conduct. (ECF No. 52-7, ¶ 120). Specifically, Defendant Rossomanno was within arms-length of SLMPD officers as they pepper sprayed and beat peaceful and compliant citizens, but he did nothing to intervene. (*Id*. at ¶ 87). Instead, Defendant Rossomanno took control of situation and directed the officers' unlawful actions. (*Id*.).

In addition to the above allegations, Mr. Faulk's complaint alleges that **all Supervisory Defendants** participated in parts of the unconstitutional activity. All Supervisory Defendants knew

or should have known that the plan to kettle all those present—which they carried out, ordered, and directly supervised—would result in arrests without probable cause and the unjustified use of force to effectuate said arrests. (ECF No. 52-7, ¶ 53; ECF No. 52-2, Settlement Agreement in *Templeton v. Dotson*, No. 4:14-cv-02019). After Defendant Rossomanno gave a dispersal order, officers continued to allow citizens to move freely around the area, including individuals walking their dogs, pushing baby strollers, and just curiously observing the police activity. (ECF No. 52-6 at 11-12). These individuals were then kettled without warning and prevented from leaving. (*Id.* at 12, 14).

Emails produced as part of a federal investigation of these events show that officers were informed ahead of time that they would be deployed wearing military-like tactical dress that would both conceal their identities and encourage militaristic police behavior at a peaceful protest. (ECF No. 52-7, ¶ 96). All Supervisory Defendants directly supervised officers in such dress as they violated Mr. Faulk's civil rights. (*Id.*)

The violations planned, ordered, and carried out by Defendants as described above caused Mr. Faulk significant harm. First, Mr. Faulk was seized by four lines of SLMPD officers who slowly boxed him and others in at the intersection of Washington and Tucker. (ECF No. 52-7, ¶ 144). This seizure took place without probable cause. Mr. Faulk was then shoved from behind by an officer, and pushed into the street by officers using their riot shields to direct him.  (*Id.* at ¶ 153). Then, one SLMPD officer struck Mr. Faulk in the genitals as several others jumped on top of him. (*Id.* at ¶ 154).  At no point did he resist. (*Id.*)  Now on the ground, Mr. Faulk felt an SLMPD officer use his boot to press Mr. Faulk's head into the asphalt of the street. (*Id.* at ¶ 156). Soon thereafter, another officer sprayed him directly in the face with pepper spray. (*Id.* at ¶ 157). His hands were then bound tightly with zip ties as another SLMPD scrolled through his phone and

turned his phone off. (*Id.* at ¶¶ 158-59). Mr. Faulk was brought to City jail, where he was detained until 1:30 the following afternoon. (*Id.* at ¶¶ 160-174).

## ARGUMENT

Contrary to Defendant's' claims, Mr. Faulk's Complaint contains sufficient factual allegations to "raise a right to relief above the speculative level" for each count and as to each Defendant. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mr. Faulk's Complaint alleges, and Defendants' sworn testimony confirms, that each Individual Defendant was himself personally involved in the deprivation of constitutional liberties that Mr. Faulk suffered on September 17, 2017. Further, none of the individual Defendants are entitled to qualified immunity or official immunity because their actions violated clearly established law and were undertaken in bad faith.

### I.   Mr. Faulk has Sufficiently Pled all of the Claims in his Third Amended Complaint.

The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) merely requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." To meet this standard and to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). As a result, "threadbare recitals" of a cause of action unsupported by any facts are insufficient. *Iqbal*, 556 U.S. at 678; *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the facial plausibility standard simply requires enough factual content to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

A motion to dismiss should not be granted merely because a complaint does not state with precision every element of the claim necessary for recovery. *Roberts v. Walmart Stores, Inc*., 736 F.Supp. 1527, 1528 (E.D. Mo. 1990).  Further, in determining whether the facial plausibility standard has been met, the court must accept all of the plaintiff's factual allegations as true and draw all inferences in the plaintiff's favor. *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). Documents attached to or incorporated within a complaint are part of the pleadings, and may be considered by the Court when determining whether a plaintiff has stated a plausible claim. *Id.* (citing *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459-60 (8th Cir. 2010)). Thus, the Supreme Court has stated that a court can only dismiss a complaint "if it is clear that *no* relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v.  King & Spalding*, 467 U.S. 69, 73 (1984).

## A.   Mr. Faulk has Sufficiently Pled Violations Against the Supervisory Defendants in Counts I and II.

It is well established in the Eighth Circuit that supervisors are liable where they personally participated in a constitutional violation, or knew about unconstitutional conduct and facilitated, approved, condoned or turned a blind eye to such conduct. *Wagner v. Jones*, 664 F.3d 259 (8th Cir. 2011) (citing *Ottman v. City of Independence*, Mo., 341 F.3d 751, 761 (8th Cir. 2003) (citations and internal quotes omitted); *Andrews v. Fowler,* 98 F.3d 1069, 1078 (8th Cir. 1996) (tacit authorization or failure to sufficiently supervise the offending actions of an employee sufficient for supervisor to be liable). Further, a supervisor can be found liable under § 1983 "for deliberate indifference if he is aware of 'a substantial risk of serious harm,' even if he is not aware that the harm has, in fact, occurred." *Kahle v. Leonard,* 477 F.3d 544, 551–52 (8th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842, (1994)). Mr. Faulk sufficiently pled facts that, accepted as true, state claims against the Defendant Supervisors for their personal violations of his

First, Fourth, and Fourteenth Amendment rights that are "plausible on [their] face."[1] *Iqbal*, 556 U.S. at 678.

Specifically, the complaint alleges that Defendant Colonel Leyshock was the incident commander during the events of September 17, 2017 and approved the plan to restrict the movements of individuals who were attempting to leave the vicinity of Washington Avenue and Tucker Boulevard and to arrest everyone present. (ECF No. 52-7, ¶¶ 12, 42). Defendant Lieutenant Sachs, who was in direct command and responsible for deploying tactical units, testified under oath that he and Leyshock decided to effectuate a mass arrest at Washington and Tucker, where Mr. Faulk was located. (*Id*. at ¶¶ 52, 114; ECF No. 52-6 at 9-10). Defendant Sachs's own testimony states that he developed the plan to mass police officers in such a manner that citizens would be unable to exit and that Leyshock approved that plan. (*Id*. at ¶ 52).

Thus, both Leyshock and Sachs were directly involved in planning and approving the kettling plan knowing that it would result in the violation of individuals' First Amendment rights and would likely result in arrests without probable cause in violation of the Fourth Amendment. In addition, given that the police department had a long history of indiscriminately using chemical agents against protestors without warning, without giving individuals an opportunity to comply with any instructions, without mitigating the impact of the use of chemical agents, and without ensuring a safe means of egress for people attempting to comply with police instructions, both Leyshock and Sachs should have been aware of a "substantial risk of serious harm" from their

---

[1] Defendants do not argue that Mr. Faulk failed to sufficiently plead any of the other elements of his First, Fourth, or Fourteenth Amendment claims contained in Counts I and II. This is likely because there were substantial facts presented that Mr. Faulk's seizure, arrest, and assault were motivated at least in part because he was a member of the media and was assembled in a group with protesters, many of whom were considered to be arguing for police reform (ECF No. 52-7, ¶ 91). Because Defendants have limited their claim to whether Mr. Faulk sufficiently pled facts regarding the individual Supervisory Defendants' actions, Plaintiff will limit his response to that argument.

orders. (ECF No. 52-7, ¶¶ 29-31; ECF No. 54 ¶ 31; ECF No. 54-2, Temporary Restraining Order in *Templeton v. Dotson*, No. 4:14-cv-02019, at \*3 (E.D. Mo. Dec. 11, 2014)).

Further, the remaining Supervisory Defendants—Boyher, Jemerson, Karnowski, and Rossomanno—were all physically present at the illegal kettling location and were responsible for directing the officers' under their command. (ECF No. 52-7, ¶¶ 13, 15, 16, 17, 47, 50, 63, 76-77, 113). The Complaint also specifically alleges that Defendant Boyher was in charge of and directed the officers who used their bicycles as battering rams against the protesters and who refused to let Mr. Faulk leave (*id*. at ¶¶ 76-77, 143); that Defendant Karnowski directed the officers under his command to use force against the peacefully assembled individuals (*id*.); and that Defendant Rossomanno was responsible for giving the vague dispersal order that was used as the basis for the illegal arrests of peaceful citizens and was within arms-length of police officers as they pepper sprayed and beat compliant citizens (*id*. at ¶ 87). Defendants themselves admit that the dispersal order was unclear and took place more than an hour before the SLMPD officers kettled, beat, and arrested Mr. Faulk. (*Id*. at ¶ 44, 48).

Thus, the Complaint sufficiently pleads facts that the Court can reasonably infer Defendants Boyher, Jemerson, Karnowski and Rossomanno were all present and either directing or observing the constitutional violations committed by the officers under their command. At the very least, therefore, the Complaint presents sufficient facts that these Defendants knew about unconstitutional conduct and facilitated, approved, condoned or turned a blind eye to such conduct. *Wagner*, 664 F.3d at 259.

Thus, Defendants' Motion to Dismiss Counts I and II for failing to allege specific conduct by the individual supervisors should be denied.

**B. Mr. Faulk Alleged Sufficient Facts to State a Claim Against Each Supervisory Defendant for Conspiracy Under § 1983 (Count IV).**

11

Plaintiff has pled sufficient facts to state a § 1983 conspiracy claim. To establish a claim under § 1983, a plaintiff must allege that (1) the officers conspired to deprive the plaintiff of a constitutional right; (2) at least one co-conspirator engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured the plaintiff. *Helmig v. Fowler*, 828 F.3d 755, 763 (8th Cir. 2016) (citing *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)). At the outset, a complaint need only allege facts "suggesting such a meeting of the minds" in order to state a claim. *See Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) (citing *White v. Walsh*, 649 F.2d 560, 561-62 (8th Cir. 1981)).

Plaintiff's Complaint contains facts to indicate a meeting of the minds existed among the Supervisory Defendants. Specifically, Mr. Faulk alleged that Defendants Leyshock, Sachs, Jemerson, and Rossomanno conspired to design and implement the illegal kettling plan, with the intent to unlawfully arrest and use excessive force against protestors. (ECF No. 52-7, ¶ 216). Defendant Sachs came up with the specific plan to arrest everyone present, which included Mr. Faulk. (*Id*. at ¶¶ 52, 114). Defendant Leyshock, as incident commander, approved the plan. (*Id*. at ¶¶ 12, 42). Further, Defendants Boyher, Jemerson, Karnowski, and Rossomanno were all physically present at were responsible for implementing the illegal kettling of peaceful citizens. (*Id*. at ¶¶ 13, 15, 16, 17, 47, 50, 63, 76-77, 113).  Indeed, how else could it be possible that four separate groups of police officers converged on a single intersection in downtown St. Louis on a Sunday night? To imagine that such a choreographed action does not constitute a "meeting of the minds" defies logic. Thus, accepting all of the plaintiff's factual allegations as true and draw all inferences in the plaintiff's favor, Mr. Faulk has sufficiently alleged the Supervisory Defendants conspired to violate his constitutional rights.

The second element of conspiracy is also met, because Mr. Faulk has pled facts showing that at least one co-conspirator committed an overt act in furtherance of the conspiracy.

Specifically, at the direction of Defendants Leyshock and Sachs, SLMPD officers formed four separate lines from the North, South, East, and West of the intersection of Washington and Tucker to converge and form a kettle (ECF No. 52-7, ¶¶ 136-141). Defendant Boyher directed officers who were carrying bicycles to form a line extending across all of the street and sidewalk on Washington Avenue one half block east of Tucker Boulevard (*Id*. at ¶¶ 61-62). Defendant Karnowski and officers under his command "'push[ed] protestors north' toward Washington Avenue and Tucker Boulevard." (*Id*. at ¶ 50). Defendants Boyher and Karnowski directed the officers to use force against Mr. Faulk and others. (*Id*. at ¶¶ 77), and Defendant Karnowski supervised unlawful arrests. (*Id*.). Thus, Mr. Faulk has pled facts showing even more than one co-conspirator committed acts in furtherance of the conspiracy, and he has sufficiently pled the second element.

Finally, there is more than sufficient evidence pled that the conspiracy injured Mr. Faulk. Specifically, that despite showing police officers his press credentials, Mr. Fault was surrounded by police, tackled, struck with a baton, and pepper sprayed in the face from less than two feet away while being held down by police officers. (ECF No. 52-7, ¶¶ 128, 152-157). Thus, Defendants' conspiracy to illegally detain and arrest individuals exercising their constitutional rights led directly to Mr. Faulk's injuries.

Mr. Faulk has sufficiently alleged facts that, accepted as true, allow the court to draw the reasonable inference that Defendants are liable for conspiracy. As such, the Motion to Dismiss Count IV should be denied.

## C.  Mr. Faulk has Alleged Sufficient Facts Supporting his State Law Tort Claims.

Mr. Faulk raised the following state law claims in his Complaint: assault and battery (Count VI), false imprisonment (Count VII), intentional infliction of emotional distress (Count VIII), negligent infliction of emotional distress (Count IX), and conversion (Count X). The sufficiency

of Plaintiff's allegations regarding the elements of his assault and battery claims, Count VI, are

not in dispute. Because Mr. Faulk has sufficiently pled facts supporting each of his remaining state

law claims, the Motion to Dismiss should be denied.

## False Imprisonment

In order to sufficiently meet the elements for false imprisonment, a plaintiff need only

claim "(1) the detention or restraint of one against [his] will, and (2) the unlawfulness of such

detention or restraint." *Gibbs v. Blockbuster, Inc.*, 318 S.W.3d 157, 169 (Mo. Ct. App. 2010).

Further, "[a] defendant may be liable for false arrest if he actually arrests or restrains a person, or

if he encourages, causes, promotes or instigates the arrest or restraint by another." *Taylor v. Isom*,

No. 4:11-CV-1351 CAS, 2013 WL 1867106, at *24 (E.D. Mo. May 2, 2013).

Plaintiff pled facts showing he was detained against his will. Specifically, that he was

unable to leave the area of the kettling (ECF No. 52-7 at ¶¶ 64, 66, 144-45) despite asking officers

to be permitted past their lines. (*Id*. at ¶¶ 67-69, 73, 75, 143). He was subsequently surrounded by

police, tackled, struck with a baton, and pepper sprayed in the face from less than two feet away

while being held down by police officers. (*Id*. at ¶¶ 128, 152-157). Mr. Faulk was not doing

anything illegal and did not hear any dispersal order. (*Id*. at ¶¶ 138).  Defendant Wismar arrested

Mr. Faulk without probable cause. (*Id*. at ¶¶ 52, 160). Mr. Faulk was restrained with zip-ties and

jailed for thirteen hours. (*Id*. at ¶¶ 88, 174). Thus, there are sufficient facts in the pleading that Mr.

Faulk was restrained against his will.

As discussed *supra*, there are sufficient facts pled to show the kettling of Mr. Faulk and

others was unconstitutional and intended to enable the police to arrest individuals despite not

having probable cause. The fact that the individual Supervisory Defendants were not the ones who

arrested Mr. Faulk is immaterial. Where an individual encourages, causes, promotes or instigates

the arrest or restraint by another, they are liable for false imprisonment. *Isom*, 2013 WL 1867106, at *24. Mr. Faulk has alleged actions by all of the Supervisory Defendants that encouraged, promoted or instigated the illegal arrest and restraint of peaceful citizens, including himself. (ECF No. 52-7 at ¶¶ 13, 15-17, 47, 50, 63, 76-77, 150-158).

Thus, because Mr. Faulk's Complaint has alleges he was unlawfully detained, and that his detention was instigated, caused, or promoted by the Supervisory Defendants, Defendants' Motion to Dismiss Count VII should be denied.

<u>**Intentional Infliction of Emotional Distress**</u>

A claim for Intentional Infliction of Emotional Distress in Missouri merely requires a plaintiff to allege (1) the Defendants' conduct was extreme and outrageous; (2) the conduct was intentional or done recklessly; and (3) the conduct caused severe emotional distress that results in bodily harm. *Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2001).

Mr. Faulk's Complaint alleges a series of intentional and reckless actions by the Supervisory Defendants that were extreme and outrageous. First, the Complaint alleges that officers, under the direction of the Supervisory Defendants, indiscriminately kettled and deployed chemical agents on peaceful and compliant citizens repeatedly and without warning, including Mr. Faulk. (ECF No. 52-7, ¶¶ 71, 80, 115, 117, 119(c), 147-165). Officers tackled Mr. Faulk, knocked him to the ground and forcefully restrained his arms and legs despite Mr. Faulk's compliance at all times. (*Id*. at ¶ 154). At least one officer used his boot to press Plaintiff's head against the pavement. (*Id*. at ¶ 156). Officers pepper sprayed Plaintiff while he was already on the ground complying with commands and not resisting. (*Id*. at ¶ 157). Thus, there is sufficient evidence pled in the Complaint that the actions of the police department, under the supervision and direction of the Defendants, was extreme and outrageous.

15

Further, Mr. Faulk has pled facts that these actions were intentional. The kettling and arrests were done despite the fact that, according to Defendant Sachs, no property damage had occurred in the relevant area in the roughly 3-4 hours before the kettling arrests. (ECF No. 52-7, ¶ 112). During and after the arrests, officers were observed high fiving each other, smoking celebratory cigars, taking selfies on their personal phones with arrestees against the arrestees' will, and chanting "Whose Streets? Our Streets!" (*Id*. at ¶¶ 90, 163). Further, after the unlawful arrest of dozens of citizens, a celebratory photo of the Civil Disobedience Team was posted to social media with the caption "SLMPD CDT Team welcomes protesters." (*Id*. at ¶ 91). Taking these facts and true, and making all reasonable inferences in favor of Mr. Faulk, he has pled sufficient facts to show that the actions of the Defendants were intentional.

Finally, Mr. Faulk alleges in his complaint that he suffered injuries are a result of his kettling and unlawful arrest. Those injuries include psychological difficulties that required Mr. Faulk to take a four-month medical leave to address the trauma associated with his kettling and unlawful arrest. (ECF No. 52-7, ¶¶ 181, 183). In addition to the psychological and emotional harms, Mr. Faulk suffered physical injury, lost time, loss of employment opportunity, and loss of faith in society. (*Id*. at ¶ 254).

Because Plaintiff sufficiently pled that each of the Supervisory Defendants participated in extreme or outrageous intentional conduct that caused Mr. Faulk to suffer severe emotional distress that resulted in bodily harm,  Defendants' Motion to Dismiss Count VIII should be denied.

### Negligent Infliction of Emotional Distress

The Missouri Supreme Court has held that a plaintiff must merely show that (1) the Defendant should have realized that its conduct involved an unreasonable risk of causing the distress and (2) the resulting emotional distress or mental injury is medically diagnosable and

sufficiently severe to be medically significant. *Gibson v. Brewer*, 952 S.W.2d 239, 248-49 (Mo. 1997). Because Mr. Faulk has asserted factual allegations to satisfy each element of Negligent Infliction of Emotional Distress, Defendants' Motion to Dismiss should be denied.

Each of the Supervisory Defendants participated in activities that they should have realized posed an unreasonable risk of causing severe and medically diagnosable distress or mental injury to Mr. Faulk. Specifically, Mr. Faulk alleges that officers, under the direction of the Supervisory Defendants, tackled him, knocked him to the ground and forcefully restrained his arms and legs despite Mr. Faulk's compliance at all times. (ECF No. 52-7, ¶ 154). At least one officer used his boot to press Plaintiff's head against the pavement. (*Id*. at ¶ 156). Officers pepper sprayed Plaintiff while he was already on the ground complying with commands and not resisting. (*Id*. at ¶ 157). Even if Defendants were previously unaware of the potential for such actions to cause severe and medically diagnosable distress or mental injury, they should have been made aware upon the Eastern District of Missouri's granting of a Temporary Restraining Order three years earlier. (ECF No, 52-1, Temporary Restraining Order in *Templeton v. Dotson*, No. 4:14-cv-02019, at *3 (E.D. Mo. Dec. 11, 2014)).

As a result of the above actions of the Supervisory Defendants and officers under their command, Mr. Faulk was reasonably in fear for his own person and suffered emotional distress or mental injury that is medically diagnosable and sufficiently severe to be medically significant (ECF No. 52-7, ¶ 261). Specifically, Mr. Faulk suffers psychological difficulties, including nightmares, as a result of his kettling and unlawful arrest. (*Id*. at ¶ 181). Plaintiff took a four-month medical leave to address the trauma associated with his kettling and unlawful arrest. (*Id*. at ¶ 183).

Both of the elements of Negligent Infliction of Emotional Distress are sufficiently pled and Defendants' motion as to Count IX should be denied.

**Conversion**

To succeed on a claim of conversion, Plaintiff must merely show that "(1) he owned the property or was entitled to possess it; (2) the defendant took possession of the property with the intent to exercise some control over it; and (3) the defendant thereby deprived the plaintiff of the right to possession." *Hunt v. Estate of Hunt*, 348 S.W.3d 103, 113 (Mo. 2011).

Mr. Faulk alleged that he is the owner of a $200 bicycle that he rode while reporting the events of September 17, 2017. (ECF No. 52-7, ¶ 267). Police officers, under the direction of the Supervisory Defendants, seized and took possession of Mr. Faulk's bicycle without his permission. (*Id*. at ¶¶ 267, 269). Despite Mr. Faulk's demands to return the bicycle to him, Defendants continue to deprive Mr. Faulk of the right of possession of his property. (*Id*. at ¶¶ 270-272). Defendants' bad-faith and malicious seizure of Mr. Faulk's bicycle resulted in damages for the purchase value of the bicycle and loss of use of the bicycle (*Id*. at ¶¶ 276-277).

Because Mr. Faulk sufficiently pled each of the above allegations, Defendants' Motion to Dismiss as to Count X should be denied.

## II.    Defendants are Not Entitled to Qualified Immunity on Counts I and II.[2]

To begin, a plaintiff is not required to plead facts in her complaint that might be responsive to an affirmative defense. *Smith v. Grifols USA,* 2016 U.S. Dist. LEXIS 29081, at *17 (E.D. Mo. March 8, 2016) (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007). Qualified immunity is an affirmative defense, to be upheld in a motion to dismiss only when the immunity

---

[2] Defendants' heading "C" seems to indicate they are also contemplating a qualified immunity claim with regards to the §1983 Conspiracy claim (ECF No. 59-1, p. 12). However, none of the discussion in that section includes discussion of qualified immunity. Thus, Mr. Faulk presumes the argument was abandoned and will address the only other argument actually raised, intracorporate conspiracy doctrine, below.

18

can be established "on the face of the complaint." *Bradford v. Huckabee*, 330 F.3d 1038, 1041 (8th Cir. 2003). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996)  (quoting *McCormack v. Citibank, N.A.*, 979 F.2d 643, 646 (8th Cir. 1992) and *Conley v. Gibson*, 355 U.S. 41, 45-46, (1957)). Here, Defendants claims of qualified immunity cannot be established on the face of the complaint and therefore cannot form the basis of a motion to dismiss.

The law is clear that an officer is not entitled to qualified immunity if the officer violated a constitutional right and the violated right was clearly established. *Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017) (citing *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012)). As discussed above, Mr. Faulk has sufficiently pled facts to support that his First, Fourth and Fourteenth Amendment rights were violated by Defendants.

Further, the law regarding all of Mr. Faulk's constitutional claims was clearly established at the time of these incidents. "Clearly established" means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A plaintiff need only show that defendants were on "fair warning" that their actions were unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). To be clearly established, there need not be a case decided on all fours with the present factual circumstances. *Vaughn v. Ruoff*, 253 F.3d 1124, 1129-30 (8th Cir. 2001). The test is "whether a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Gainor v. Rogers*, 973 F.2d 1379, 1382 (8th Cir. 1992) (citing *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

Here, it is clearly established that "streets, sidewalks, and parks are places traditionally open, where First Amendment rights may be exercised." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 578 (1980). The Eighth Circuit has recognized that a citizen has the right to exercise First Amendment freedoms "without facing retaliation from government officials" and that such a right is clearly established." *Kilpatrick v. King,* 499 F.3d 759, 767 (8th Cir. 2007); *Baribeau v. City of Minneapolis,* 596 F.3d 465, 481 (8th Cir. 2010). Thus, based on the law established at the time of the incidents in this action, a reasonable officer would have been aware that retaliating against Mr. Faulk for the exercise of his First Amendment rights was unconstitutional.

Further, the Fourth Amendment provides that people have the right to be free from unreasonable seizures of their "persons, houses, papers, and effects" without probable cause. U.S. Const. amend. IV. The Supreme Court has long held that the Fourth Amendment's protection against unreasonable seizures includes seizure of the person. *California v. Hodari D.*, 499 U.S. 621, 624 (1991). A person has been "seized" within the meaning of the Fourth Amendment if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *Id*. at 628. Here, the kettling of Mr. Faulk was clearly a seizure since he was unable to leave. Given the established law, a reasonable supervisor would have known that ordering or supervising the seizure of a person, through force and without probable cause, was unconstitutional. Thus, there is no basis for qualified immunity.

Finally, Defendants should have specifically been aware of the state of the law regarding the seizure of individuals involved in peaceful protests given that in the three years *before* the incidents involving Mr. Faulk, the Eastern District of Missouri entered a temporary restraining order and  preliminary injunction in two separate cases enjoining the City from enforcing any rule, policy, or practice that grants law enforcement officials the authority or discretion to utilize

"chemical agents" "for the purpose of dispersing groups of individuals who are engaged in peaceful, non-criminal activity." (ECF No. 54 ¶ 31; ECF No. 54-2, Temporary Restraining Order in *Templeton v. Dotson*, No. 4:14-cv-02019, at *3 (E.D. Mo. Dec. 11, 2014); ECF No. 47-3 at 69, *Ahmad v. St. Louis*, No. 4:17-cv02455, at 69 (E.D. Mo. Oct. 18, 2017). The Eastern District specifically found the plaintiffs were likely to prevail on their claim that the City "has a custom or policy of using chemical agents without warning on citizens engaged in expressive activity that is critical of police or who are recording police in retaliation for the exercise of their first amendment rights." (ECF 52-7, ¶ 119; ECF No. 52-6, Memorandum and Order of Preliminary Injunction, *Ahmad v. St. Louis*, No. 4:17-cv-02455 (E.D. Mo. Nov. 15, 2017). Mr. Faulk alleges the exact same activity happened to him on September 17, 2017 (ECF No. 52-7, ¶ 39). Thus, there is no basis in the Complaint for Defendants' claim of qualified immunity and the Motion to Dismiss should be denied.

## III.   Defendants are Not Entitled to Official Immunity in Counts VII, VII, IX or X.

Official immunity does not apply to cases involving bad faith or with malice. *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015); *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. banc 1986). Rather, the purpose of official immunity is to protect public officials from liability for acts of ordinary negligence committed during the course of their official duties. *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. 2006). Thus, a defendant in "bad faith," and is not protected by official immunity, when he consciously breaches of a known duty through some ulterior motive. *Twiehaus*, 706 S.W.2d, 447. Further, a defendant acts with malice and is not protected by official immunity "when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be

prejudicial or injurious to another." *Davis*, 794 F.3d at 1013 (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. en banc 1986)).

Here, Mr. Faulk's Complaint alleges facts sufficient on their face to show bad faith or malice, and therefore Defendants are not entitled to dismissal based on official immunity. Specifically, Mr. Faulk alleged that the officers acted with "malice" and "actual, wanton intent to cause injury," (ECF No. 52-7, ¶ 248), that police officers under Defendants' command singled out members of the media such as Mr. Faulk, (*id*. at ¶ 153), that officers assault Mr. Faulk, who is not resisting, (*id*. at ¶ 159), that officers under the Defendants' command conducted an illegal search of Mr. Faulk's phone, (*id*. at ¶ 153), and police officers did so knowing that these actions were in violation of citizens' constitutional rights as evidenced by their social media post bragging that, "SLMPD CDT Team welcomes protesters [sic]" (*id*. at ¶ 91).

Because Mr. Faulk alleged facts on its face supporting that Defendants were acting with malice and contrary to their duties as officers, Defendants are not entitled to dismissal based on official immunity.

## IV.   The Intracorporate Conspiracy Doctrine Does Not Bar Plaintiff's Conspiracy Claims in Count IV.

Mr. Faulk's claims are not barred by the intracorporate conspiracy doctrine. To begin, the Eighth Circuit has not determined whether the doctrine is even applicable to § 1983 claims. *Powers v. City of Ferguson,* 229 F.Supp.3d 894, 905 (E.D. Mo. 2017). Defendants offer no authority for the application of the intracorporate conspiracy doctrine to § 1983 conspiracy claims and rely solely on case law raising that defense under § 1985.[3] (ECF No. 54 at 7).

---

[3] Defendants cite *Cross v. Gen. Motors Corp.*, 721 F.2d 1152 (8th Cir. 1983), *L.L. Nelson Enters., Inc. v. County. of St. Louis, Mo.*, 673 F.3d 799 (8th Cir. 2012), and *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070 (8th Cir. 2016), all conspiracy cases under 42 U.S.C. § 1985.

Further, courts in this circuit have repeatedly denied motions to dismiss based on the intracorporate conspiracy doctrine in § 1983 cases. *Powers v. City of Ferguson*, 229 F.Supp.3d 894, 897 (E.D. Mo. 2017); *Golden v. Moutray,* 2018 U.S. Dist. LEXIS 62828, at *11 (E.D. Mo. April 13, 2018); *Anzaldua v. Northeast Ambulance & Fire Prot. Dist.,* 2014 U.S. Dist. LEXIS 14568, at *8 (E.D. Mo. Feb. 5, 2014).  For example, because the purpose of the intracorporate conspiracy doctrine is to shield corporations from liability for "routine, collaborative business decisions," several courts have held that allegations of police misconduct or excessive force are not protected; finding that "conspiracies and cover-ups are not the product of routine police department decisions-making." *Pinell v. City of Gerald, Mo.,* 2018 U.S. Dist. LEXIS 45957, at *24 (E.D. Mo. Mar. 21, 2018); *Howard v. City of Chicago,* 2004 U.S. Dist. LEXIS 21537, at *33-34 (N.D. Ill. Oct. 25, 2004); *Golden,* 2018 U.S. Dist. LEXIS 62828, at *11; *Newsome v. James,* 2000 U.S. Dist. LEXIS 5678, at *46 (N.D. Ill. April 26, 2000).

Further, several courts have held that because of the standard of review on motions to dismiss "the interests of justice are not best served by considering the intracorporate conspiracy doctrine at this pre-evidentiary stage" in § 1983 conspiracy cases. *Golden*, 2018 WL 1784395 at *11 (citing *Powers*, 229 F. Supp. 3d 894, 904–05 (E.D. Mo. 2017); *Anzaldua*, 2014 WL 46234, at *8 (aff'd in part, rev'd in part on other grounds and remanded, 793 F.3d 822 (8th Cir. 2015)).

Here, the police officers' behavior involves illegal and unconstitutional actions. As such, the officers cannot be considered to have been acting within the scope of their employment or conducting routine activities and the intracorporate conspiracy doctrine does not shield the Defendants from liability. Further, given the early stage of this litigation, and the lack of discovery

on the matter, even if the Court were inclined to consider the applicability of this doctrine to the facts here, the court should defer such analysis until the summary judgment stage.

Thus, Defendants' Motion to Dismiss based on the intracorporate conspiracy doctrine should be denied.

## **CONCLUSION**

For the reasons stated above, Plaintiff has pleaded sufficient facts to state a claim upon which relief can be granted and Defendants are not entitled to dismissal. Therefore, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint in full.

Dated: February 27, 2019                    Respectfully submitted,


                                             By:_____
                                                 David C. Nelson  (MBE #46540MO)
                                                 Nelson and Nelson
                                                 420 N. High St.
                                                 Belleville, IL 62220
                                                 618-277-4000
                                                 314-925-1307 (fax)
                                                 dnelson@nelsonlawpc.com


                                             *and*

                                             **ArchCity Defenders, Inc.**

                                             By:/s/ John M. Waldron_____
                                                 Blake A. Strode  (MBE #68422MO)
                                                 Michael John Voss (MBE #61742MO)
                                                 Sima Atri (MBE #70489MO)
                                                 John M. Waldron (MBE #70401MO)
                                                 440 North 4th Street, Ste. 290
                                                 St. Louis, MO 63102
                                                 855-724-2489 ext. 1021
                                                 314-925-1307 (fax)

bstrode@archcitydefenders.org
mjvoss@archcitydefenders.org
satri@archcitydefenders.org
jwaldron@archcitydefenders.org

*Attorneys for Plaintiff*