UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL FAULK, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 4:18CV308 JCH |
| | ) |
| CITY OF ST. LOUIS, MISSOURI, et al., | ) |
| | ) |
|     Defendants. | ) |

### MEMORANDUM AND ORDER

This matter is before the Court on the Motion to Dismiss Counts I, IV, V, VII[1], VIII, IX and X by the City of St. Louis ("Defendant" or "City"), filed February 6, 2019.  (ECF No. 53). The motion is fully briefed and ready for disposition.

### BACKGROUND[2]

Taken as true for the purpose of this motion, the facts alleged in the Third Amended Complaint are as follows.   On September 15, 2017, the Circuit Court of the City of St. Louis issued its findings and verdict in *State of Missouri v. Stockley*, prompting some members of the public to engage in protests around the City.   The protests concerned not only the verdict but broader issues, including racism in the criminal justice system and the use of force by police against African-American citizens.   Although most of the protests were non-violent, St. Louis

---

[1] The City is named as a Defendant in neither Count VI, entitled "Missouri State Law:  Assault and Battery (Against Defendant Doe Police Officers 2-5 and Defendant Wismar)", nor Count VII, entitled "Missouri State Law:  False Arrest and False Imprisonment (Against All Individual Defendants)".  In both Counts, however, Plaintiff includes allegations regarding the City's alleged waiver of sovereign immunity due to its procurement of insurance.  (*See* Compl., ¶¶ 237-239, 244-246).  If Plaintiff elects to file a Fourth Amended Complaint, as permitted below, he should clarify whether he intends to assert claims of assault and battery and/or false arrest and false imprisonment against Defendant City.

[2] The Court's background section is taken from Plaintiff's Third Amended Complaint, to which Defendant City has not yet filed an answer.

1

Metropolitan Police Department ("SLMPD") officers "amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields and carrying chemicals." (Third Amended Complaint ("Compl."), ¶ 23).

On September 17, 2017, Plaintiff Michael Faulk, an award-winning journalist, was reporting on the protests in downtown St. Louis. Plaintiff was using his bicycle to travel around downtown. Around 8:30 p.m., Plaintiff witnessed masked individuals break a restaurant window. He also saw several other damaged windows.

Just before 10:00 p.m., Plaintiff rode his bicycle back to the Post-Dispatch parking lot. He speculated on Twitter that perhaps the worst was over for the night. At some point thereafter, however, Plaintiff saw emergency lights flashing and officers approaching Tucker Boulevard between Olive and Washington. From Locust Street, Plaintiff tweeted "Bike cops blocking Locust and 11th #STLVerdict Spectators there and big group of people at St. Charles/Tucker." (Compl., ¶ 137). The officers began to lift their bicycles and pound them on the ground in unison, while walking west toward Plaintiff and others. Without giving any dispersal orders or warnings that chemical agents would be used, the officers ordered people to move west on Locust or north on Tucker.

Plaintiff heeded the officers' orders, and walked north on Tucker Boulevard to the intersection of Washington Avenue and Tucker. Suddenly, the riot police north of Plaintiff started to beat their batons on their shields in unison. Plaintiff sought some way to get out of the police kettle[3] that had formed, but officers ignored his questions and requests for help.

---

3 According to Plaintiff's Third Amended Complaint, "kettling" is a law enforcement tactic by which officers encircle a group of protestors without providing a means of egress.

2

Following the lead of others gathered in the intersection, Plaintiff placed his bike on the ground and got down on his hands and knees over the bike. SLMPD officers approached individuals in the group who were kneeling or lying down, shouting "Stop Resisting" and "Get Down!" to the citizens who were, quite visibly, trying to obey whatever SLMPD officers commanded. (Compl., ¶ 149).

Approaching the group of kettled citizens on the ground, SLMPD officers began indiscriminately deploying pepper spray on the submissive crowd. Plaintiff felt the pepper spray land on his back and neck, causing immediate and acute stinging pain.

Officer Willis of the SLMPD grabbed Plaintiff as he lay on the ground, attempting to pull him up by his collar. Plaintiff shouted several times, "Post-dispatch!", and lifted his media credential ID card to show Willis. Willis let go of Plaintiff, who was now standing, but immediately thereafter, Plaintiff was pushed from behind by another officer. Plaintiff was shoved in the direction of several other SLMPD officers, who then used their riot shields to shove Plaintiff off the sidewalk and into the street. Several officers then grabbed Plaintiff from behind, using their full weight to tackle him to the ground, and one officer used his baton to try and strike Plaintiff in the genitals as several others jumped on top of him, seizing each of his limbs. Further, one officer used his weight to press Plaintiff's head into the street asphalt, and another sprayed him directly in the face with pepper spray.[4] Plaintiff maintains that at all times, he did not resist the officers in any way.

As Plaintiff lay on the ground, another SLMPD officer very tightly tied his hands with plastic "zip-cuffs". Defendant Andrew Wismar then arrested Plaintiff.[5] Plaintiff was taken to the

---

4 Plaintiff does not identify by name the officers who pushed him, grabbed him, assaulted him and sprayed him with pepper spray.
5 Plaintiff alleges upon information and belief that Defendant Wismar was one of the SLMPD officers who used

St. Louis City Justice Center, where he was placed in a cell with approximately fifteen other men. Plaintiff attempted to continue his reporting, but when an officer learned he was a journalist, the officer removed Plaintiff and placed him in his own cell. Plaintiff eventually was again placed in an over-capacity cell with other protest arrestees. At no time was he given medical attention, despite requesting such on several occasions. Plaintiff remained detained for approximately thirteen hours.

As noted above, Plaintiff claims he was not engaged in unlawful activity at any time during his encounter with police. Plaintiff further alleges that during and after the arrests, SLMPD officers were observed high fiving each other, smoking celebratory cigars, taking "selfies" on their cell phones with arrestees against the arrestees' will, and chanting "Whose Streets? Our Streets!" (Compl., ¶ 90).

Plaintiff filed the instant Third Amended Complaint on January 22, 2019, naming as Defendants the City and several SLMPD officers alleged to have been involved in the relevant events. With respect to Defendant City, Plaintiff asserts claims for First and Fourteenth Amendment violations (Count I), § 1983 conspiracy to deprive civil rights (Count IV), and § 1983 municipal liability for failure to train, discipline and supervise, and for customs of conducting unreasonable searches and seizures and use of excessive force (Count V). Plaintiff further asserts supplemental state-law claims against Defendant City, alleging intentional and negligent infliction of emotional distress (Counts VIII and IX), and conversion (Count X).

As noted above, Defendant City filed the instant Motion to Dismiss on February 6, 2019. (ECF No. 53). The City moves to dismiss Plaintiff's § 1983 claims, arguing that they fail

---

excessive force against him.

4

adequately to allege municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Next, the City moves to dismiss Plaintiffs' § 1983 conspiracy claim on the basis that it is barred by the intracorporate conspiracy doctrine, citing *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1078 (8th Cir. 2016). The City contends that, as the Eighth Circuit held in *Kelly*, a local government entity cannot conspire with itself through its agents acting within the scope of their employment. Finally, the City argues that Plaintiff's state-law claims against it are barred by the doctrine of sovereign immunity.

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion dismiss, the Court must view the allegations in the complaint in the light most favorable to plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). The complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

## DISCUSSION

**I.** *Monell* **Claims Against the City**

Plaintiff alleges that the following policies, practices, or customs caused the alleged constitutional violations in this case, thereby making the City liable under *Monell:*

a. SLMPD officers' routine use of excessive force when policing protests, especially those at which police brutality is being protested;

b. SLMPD custom or policy of using chemical agents without warning on citizens who are not resisting arrest and who are exercising First Amendment rights, whether those rights be protesting or reporting;

c. SLMPD's policy or custom of issuing vague and even contradictory dispersal orders without giving an opportunity to comply;

d. SLMPD's policy of arbitrarily declaring unlawful assemblies in the absence of any threat or force or violent activity that provides no notice to citizens [of] unlawful conduct;

e. Additionally, SLMPD has a custom, policy, or practice of violating the Fourth Amendment by regularly conducting unreasonable seizures and arresting individuals without probable cause.

(Compl., ¶ 227). Plaintiff also claims that the City inadequately trained, supervised, and disciplined SLMPD officers, including the remaining Defendants, with respect to the use of chemical agents and the use of force. (*Id.,* ¶ 228).

For § 1983 liability to attach to the City, Plaintiff must show that a constitutional violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). In its Motion to Dismiss, the City argues that Plaintiff's factual allegations are insufficient to establish any of these bases for liability.

    a. Official Policy or Custom

As other judges in this District have held with respect to similar *Monell* allegations in the related cases, Plaintiff's Third Amended Complaint plausibly alleges that specific SLMPD

6

policies or customs were the moving force behind the constitutional violations he suffered. *See Aldridge v. City of St. Louis, Mo.*, 4:18CV1677 CAS, 2019 WL 1695982, at *9-10 (E.D. Mo. Apr. 17, 2019); *Laney v. City of St. Louis, Mo.*, 4:18CV1575 CDP, 2019 WL 2423308, at *5 (E.D. Mo. Jun. 10, 2019). Specifically, Plaintiff alleges a pattern of using chemical agents without warning against peaceful protestors complaining of police actions, including incidents in October and November 2014, in May and August 2015, and in July 2017; as well as additional incidents that occurred after the *Stockley* verdict on September 15, 2017, and thereafter. Plaintiff also alleges that the City entered into a settlement agreement in March, 2015, in *Templeton, et al. v. Dotson, et al.*, No. 4:14-CV-2019 CEJ (E.D. Mo.), in which it agreed not to use chemical agents to disperse groups of individuals engaged in non-criminal activity without first issuing clear and unambiguous warnings that such chemical agents would be used and without ensuring that there is a means of safe egress from the area (among other protections), but that thereafter SLMPD officers continued to use chemical agents against non-violent protestors without adequate warning or opportunity to comply. These factual allegations are sufficient to support the existence of an unconstitutional policy or custom that plausibly caused the constitutional violations here. The City's Motion to Dismiss Plaintiff's *Monell* claims based on an unconstitutional policy or custom will therefore be denied.

      b. <u>Failure to Train or Supervise</u>

With respect to Plaintiff's failure to train or supervise claim, however, the Court agrees with the City that Plaintiff's conclusory allegations fail to survive a motion to dismiss. To state a viable § 1983 claim against the City for failure to train or supervise, Plaintiff must plead facts sufficient to show that: 1) the City's police officer training and supervision practices were inadequate; 2) the City was deliberately indifferent to the rights of others in adopting these

practices, such that the City's failure to train and supervise was a result of deliberate and conscious choices; and 3) the City's training and supervision deficiencies caused Plaintiff's constitutional deprivation. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citations omitted).

Plaintiff pleads no factual allegations in support of this claim, other than the conclusion that the "City has inadequately trained, supervised, and disciplined SLMPD officers, including the remaining Defendants, with respect to its officers' use of chemical agents, understanding of probable cause, use of force, and recognition of rights of members of the press." (Compl., ¶ 228). The undersigned agrees with the judges in the related cases, who have held that such an allegation, alone, is insufficient to state a claim. *See Aldridge*, 2019 WL 1695982, at *11; *Laney*, 2019 WL 2423308, at *6. The Court thus will grant the City's Motion to Dismiss Plaintiff's *Monell* claim to the extent it is based on the City's alleged failure to supervise, train, and discipline SLMPD police officers, but will grant Plaintiff leave to amend this claim if he chooses to do so.

II.  Civil Conspiracy Claim

"To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citation omitted). The first element "requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators." *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010) (citations omitted). "The plaintiff is additionally required to prove a deprivation of a

constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *White*, 519 F.3d at 814 (citation omitted).

The City challenges Plaintiff's § 1983 conspiracy claim on the basis that it is barred by the intracorporate conspiracy doctrine. The cases relied upon by the City involved conspiracy claims under 42 U.S.C. § 1985, however. *See Kelly*, 813 F.3d at 1078. The Eighth Circuit has not addressed whether the doctrine applies to § 1983 conspiracy claims, and in the absence of such direction from the Eighth Circuit, the judges in this District—including in another *Stockley* protest case—have consistently declined to extend the doctrine's reach, at least at the pleading stage. *See Aldridge*, 2019 WL 1695982, at *8 (collecting cases). Here, too, the Court finds that it is inappropriate to apply the intracorporate conspiracy doctrine at this stage. As such, the City's Motion to Dismiss Plaintiff's § 1983 conspiracy claim will be denied.

III. Sovereign Immunity

Defendant City finally asserts Plaintiff's state law claims are barred by the doctrine of sovereign immunity. "[I]n the absence of an express statutory exception to sovereign immunity, or a recognized common law exception such as the proprietary function and consent exceptions, sovereign immunity is the rule and applies to all suits against public entities[.]" *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 921-22 (Mo. 2016). Missouri law provides statutory exceptions to sovereign immunity including, as relevant here, when a political subdivision purchases liability insurance to cover certain tort claims, in the amount of and for the purposes covered by the insurance purchased. Mo. Rev. Stat. § 537.610.1; *see also Hammer v. City of Osage Beach*, 318 F.3d 832, 841 (8th Cir. 2003). "[A] plaintiff must specifically plead facts demonstrating that the claim is within this exception to sovereign

immunity" by pleading the existence of insurance and that the insurance covers the plaintiff's claim. *Epps v. City of Pine Lawn*, 353 F.3d 588, 594 (8th Cir. 2003).

As to each state-law claim, Plaintiff has pleaded that the City obtains insurance through the Public Facilities Protection Corporation ("PFPC"), a not for profit corporation into which the City pays funds yearly; that the funds are later disbursed by the corporation to pay claims against the City; and that, alternatively, the City's relationship with the PFPC serves as a self-insurance plan. (*See* Compl., ¶¶ 255-256, 262-263, 273-274). The undersigned agrees with the other judges in this District who have held that the same or similar allegations of PFPC insurance or self-insurance are sufficient at this stage to demonstrate that Plaintiff's state-law tort claims fall within an exception to sovereign immunity under § 537.610.1. *See, e.g.*, *Aldridge*, 2019 WL 1695982, at *13; *Laney*, 2019 WL 2423308, at *7; *see also Fortenberry v. City of St. Louis*, No. 4:18-CV-01937-JCH, 2019 WL 1242671, at *7 (E.D. Mo. Mar. 18, 2019). The Court therefore will deny the City's Motion to Dismiss Plaintiff's state-law tort claims on the basis of sovereign immunity.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss Counts I, IV, V, VII, VIII, IX and X by the City of St. Louis (ECF No. 53) is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** as to Plaintiff's § 1983 *Monell* claims against Defendant City of St. Louis in Count V based on failure to train and supervise, and **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to file a Fourth Amended Complaint by **August 6, 2019**, to assert *Monell* failure to train and supervise claims, and/or assault and battery, false arrest and false imprisonment claims, against the City.

**IT IS FURTHER ORDERED** that Defendants are granted an extension of time to file their answers to Plaintiff's Third Amended Complaint.  If Plaintiff does not file a Fourth Amended Complaint, Defendants shall file their answers by **August 12, 2019**.   If  Plaintiff files a Fourth Amended Complaint, Defendants shall file their answers thereto within the time  allowed by Rule 15(a)(3), Fed. R. Civ. P.


Dated this 23rd Day of July, 2019.


                                                                /s/ Jean C. Hamilton
                                                                UNITED STATES DISTRICT JUDGE