IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL FAULK,                                    )
                                                  )
Plaintiff,                                        )
                                                  )
v.                                                )          Cause No.:   4:18-cv-308
                                                  )
CITY OF SAINT LOUIS, MISSOURI,    et al.          )
                                                  )
Defendants                                        )


### PLAINTIFF FAULK'S MEMORANDUM IN OPPOSITION TO DEFENDANT WISMAR'S MOTION TO DISMISS

COMES NOW Plaintiff, Michael Faulk, submits this Response in Opposition to the Motion to Dismiss (ECF No. 81) and accompanying Memorandum (ECF No. 89) filed by Defendant Andrew Wismar. This Motion to Dismiss is largely a repeat of a prior Motion to Dismiss filed by Defendant Wismar in conjunction with Supervisory Defendants. (ECF No. 55 and 59). Mr. Faulk asks this Court to dismiss Defendant Wismar's Motion to Dismiss as Mr. Faulk has pled more than sufficient facts to support each of his claims raised.

### INTRODUCTION

On the night of September 17, 2017, Plaintiff Michael Faulk, a St. Louis Post-Dispatch reporter, was reporting on protests against police violence in the St. Louis area when officers of the St. Louis Metropolitan Police Department ("SLMPD") surrounded, pepper sprayed, assaulted, and arrested him. (ECF No. 75, ¶ 1). This incident was not isolated. SLMPD had been involved in at least two federal lawsuits involving similar facts, in the three years prior to their violation of Mr. Faulk's constitutional rights. (ECF No. 75-2, Temporary Restraining Order in *Templeton v.*

1

*Dotson*, No. 4:14-cv-02019, at *3 (E.D. Mo. Dec. 11, 2014); ECF No. 75-6, Memorandum and Order of Preliminary Injunction, *Ahmad v. St. Louis*, No. 4:17-cv-02455 (E.D. Mo. Nov. 15, 2017)).

Those prior lawsuits specifically related to the SLMPD's use of excessive force against citizens peacefully exercising their First Amendment rights and its practice of arresting people without probable cause. Despite a temporary restraining order and consent decree in one case, and a preliminary injunction in another, the SLMPD continued to indiscriminately use chemical agents against peaceful, non-criminal protestors without warning. (ECF No. 75, ¶¶ 34-37).

This action was filed after Mr. Faulk's assault and unlawful arrest by the SLMPD on September 17, 2017. Pending before the Court is a Motion to Dismiss, filed by Defendant Wismar, alleging Mr. Faulk has failed to sufficiently plead seven of his claims and that he is entitled to dismissal based on the intracorporate conspiracy doctrine and the doctrine of official immunity. (ECF No. 81).

The Court should deny Defendant Wismar's Motion to Dismiss because Mr. Faulk has pled sufficient facts, including the facts relating to prior litigation discussed above, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's Complaint contains ample factual allegations which "raise a right to relief above the speculative level" for each count and as to each Defendant. *See Twombly*, 550 U.S. at 570. Defendant Wismar ignores key factual allegations in his Motion to Dismiss, including, but not limited to, the Complaint's repeated references to other Defendant's sworn statements attesting to their personal involvement in planning, ordering, and supervising the constitutional violations in the action.

Plaintiff's Complaint made many specific allegations showing that Defendant Wismar acted to violate Mr. Faulk's constitutional rights including, but not limited to, the allegation that

Defendant Wismar personally used excessive force against Mr. Faulk and is listed as the arresting officer. This Court should deny Defendant Wismar's Motion to Dismiss.

## STATEMENT OF FACTS

On the night of September 17, 2017, Plaintiff Michael Faulk, an award-winning journalist working for the St. Louis Post-Dispatch, was reporting on protests against police violence in the St. Louis area when he was surrounded by officers of the St. Louis Metropolitan Police Department, pepper sprayed, assaulted, and arrested. (ECF No. 75, ¶ 1). Mr. Faulk had been covering the wave of protests following the acquittal of former SLMPD Officer Jason Stockley for killing Anthony Lamar Smith. (*Id.* at ¶¶ 1, 121, 125-27). Despite showing police officers his press credentials, Mr. Faulk was surrounded by police, tackled, struck with a baton, and pepper sprayed in the face from less than two feet away while being held down by police officers. (ECF No. 75, ¶¶ 128, 152-157).

Officer **Andrew Wismar** was working during the events of September 17, 2017. (ECF No. 75, ¶ 18). He was working under the command of Defendants Boyher and Karnowski, who directed the assembled officers, including Defendant Wismar, to use force against the peacefully assembled people and to unlawfully arrest the non-violent individuals assembled. (*Id.* at ¶ 77). Defendant Wismar is listed in the SLMPD Incident Report as the "Arresting Officer" of Mr. Faulk. (*Id.* at ¶ 160). In doing so, Defendant Wismar used excessive force against Mr. Faulk. (*Id.*). Defendant Wismar knew or should have known there was no probable cause to arrest Mr. Faulk and further knew he had no legal justification for using force against Mr. Faulk. (*Id.* at ¶ 18). In unlawfully arresting and using excessive force on Mr. Faulk, Defendant Wismar agreed to participate in the illegal kettling plan. (*Id.* at ¶ 218).

Mr. Faulk made the following specific claims about the role each of the other individual Defendants played during the events of the evening:

Lieutenant Colonel **Gerald Leyshock** was the incident commander during the events of September 17, 2017. (ECF No. 75, ¶¶ 12, 42). Defendant Leyshock approved Defendant Sachs's plan to restrict movement of individuals attempting to leave the vicinity of Washington Avenue and Tucker Boulevard and to arrest everyone present. (*Id.* at ¶ 52). Defendant Leyshock directed Defendant Rossomanno to issue a dispersal order. (ECF No. 75-5, Declaration of Rossomanno ¶ 15). Defendants Leyshock, along with Defendants Sachs, Jemerson, and Rossomanno, conspired to design and implement the illegal kettling plan, with the intent to unlawfully arrest and use excessive force against Plaintiff. (ECF No. 75, ¶ 216). Defendant Sachs testified that he and Defendant Leyshock decided to effectuate a mass arrest at Washington and Tucker around 10:00 PM, while Defendants Sachs and Leyshock were several blocks away. (ECF No. 75-6 at 9). Defendant Leyshock's reason for arresting peacefully assembled citizens and mere passersby was that he did not want to "allow people back into downtown" because he was worried about property damage. (*Id.*). SLMPD officers, under Defendant Leyshock's command, surrounded Downtown residents, business patrons, protestors, observers, and members of the press, including Mr. Faulk, cutting off all routes of egress - including via any sidewalk - and prohibited the people trapped inside from leaving. (ECF No. 75, ¶ 64). Defendant Leyshock also failed to prevent officers from engaging in conduct violative of Mr. Faulk's civil rights and to discipline officers when they engaged in such conduct. (*Id.* at ¶ 120).

Lieutenant **Scott Boyher** was on the ground supervising SLMPD officers during the events of September 17, 2017. (ECF No. 75, ¶ 13). Defendant Boyher directed officers who were carrying bicycles to form a line extending across all of the street and sidewalk on Washington Avenue one half block east of Tucker Boulevard. (*Id.* at ¶¶ 61-62). This line of officers carrying bicycles approached the intersection of Washington Avenue and Tucker Boulevard. (*Id.* at ¶ 63). Under the direction of Defendant Boyher, the bicycle officers began to aggressively jab at citizens using their

bicycles as battering rams. (*Id.* at ¶¶ 76-77). Defendant Boyher joined the conspiracy with Defendants Leyshock, Sachs, Jemerson, and Rossomanno when he directed officers under his control and supervision to execute their illegal kettling plan, with the intent to unlawfully arrest and use excessive force on Plaintiff. (*Id.* at ¶ 217). According to his own testimony, Defendant Boyher directed the officers under his command to use force against the peacefully assembled people. (*Id.* at ¶ 77). Subsequently, Defendant Boyher supervised the unlawful arrests of some of these individuals. (*Id*)

Lieutenant **Timothy Sachs** was in direct command of SLMPD officers during the events of September 17, 2017. (ECF No. 75, ¶ 43). Defendant Sachs was in charge of deploying tactical units. (ECF No. 52-6 at 3). According to his own testimony, Defendant Sachs was unaware of any property damage occurring downtown after 8:30 PM. (*Id.* at 9). Even with this understanding that there was no threat to property or safety, Defendant Sachs came up with the plan to arrest everyone present and presented the plan to Defendant Leyshock. (ECF No. 75, ¶¶ 52, 114; ECF No. 52-6 at 9-10). Defendant Sachs testified that he and Defendant Leyshock decided to effectuate a mass arrest at Washington and Tucker around 10:00 PM, while Defendants Sachs and Leyshock were several blocks away. (ECF No. 75-6 at 9).

Sergeant **Randy Jemerson** was on the ground supervising SLMPD officers during the events of September 17, 2017. (ECF No. 75, ¶ 15). Defendant Jemerson is a supervisor with the SLMPD's Civil Disobedience Team, a team tasked with handling protests and incidents of civil unrest. (*Id.*). Defendant Jemerson directed the Civil Disobedience Team, under his command, to the intersection of Washington and Tucker. (*Id.* at ¶ 47). Defendant Jemerson, along with Defendants Leyshock, Sachs, and Rossomanno, conspired to design and implement the illegal kettling plan, with the intent to unlawfully arrest and use excessive force against Plaintiff. (*Id.* at ¶ 216).

Sergeant **Matthew Karnowski** was on the ground supervising SLMPD officers during the events of September 17, 2017. (ECF No. 75, ¶ 16). Defendant Karnowski declared the protest that day an "unlawful assembly", which SLMPD used as a predicate to the arrests and use of chemical agents. (*Id*. at ¶ 50). Defendant Karnowski and officers under his command "'push[ed] protestors north' toward Washington Avenue and Tucker Boulevard." (*Id*.). Defendant Karnowski directed officers under his command to use force against the peacefully assembled people. (*Id*. at ¶ 77). Specifically, under the direction of Defendant Karnowski, the bicycle officers began to aggressively jab at the individuals using their bicycles as battering rams. (*Id*. at ¶¶ 76-77). Subsequently, Defendant Karnowski supervised the unlawful arrests of some of these individuals. (*Id*. at ¶ 77). Defendant Karnowski joined the conspiracy with Defendants Leyshock, Sachs, Jemerson, and Rossomanno when he directed officers under his control and supervision to execute their illegal kettling plan, with the intent to unlawfully arrest and use excessive force on Plaintiff. (*Id*. at ¶ 217).

Sergeant **Brian Rossomanno** was on the ground supervising SLMPD officers during the events of September 17, 2017. (ECF No. 75, ¶ 17). Defendant Rossomanno is a supervisor with the SLMPD's Civil Disobedience Team, a team tasked with handling protests and incidents of civil unrest. (*Id*.). Defendant Rossomanno directed individuals to the intersection of Washington and Tucker. (*Id*. at ¶ 47). Defendant Rossomanno directed the officers' unlawful actions in continued violation of citizens' civil rights. (*Id*.). At the direction of Defendant Leyshock, Defendant Rossomanno gave a vague dispersal order indicating that "anyone who remained in the area" would be "subject to arrest and potentially subject to the deployment of chemical munitions" leaving citizens confused about how to comply. (*Id*. at ¶ 113; ECF No. 52-5, Declaration of Rossomanno ¶ 15). This order did not specify how far individuals had to go to comply with the directive. (ECF No. 75-6 at 8). Defendant Rossomanno also failed to prevent officers from

engaging in conduct violative of Mr. Faulk's civil rights and to discipline officers when they engaged in such conduct. (ECF No. 75, ¶ 120). Specifically, Defendant Rossomanno was within arms-length of SLMPD officers as they pepper sprayed and beat peaceful and compliant citizens, but he did nothing to intervene. (*Id*. at ¶ 87). Instead, Defendant Rossomanno took control of situation and directed the officers' unlawful actions. (*Id*.).

In addition to the above allegations, Mr. Faulk's complaint alleges that **all Individually Named Defendants** participated in parts of the unconstitutional activity. All Supervisory Defendants knew or should have known that the plan to kettle all those present—which they planned, ordered, directly supervised, and carried out —would result in arrests without probable cause and the unjustified use of force to effectuate said arrests. (ECF No. 75, ¶ 53; ECF No. 75-2, Settlement Agreement in *Templeton v. Dotson*, No. 4:14-cv-02019). Likewise, Defendant Wismar followed orders to use excessive force against individuals, including Mr. Faulk, despite being aware there was no legal justification for doing so. (ECF No. 75, ¶ 18, 154-157). Defendant Wismar also arrested Mr. Faulk knowing he had no probable cause to effectuate the arrest. (*Id*. at ¶ 18, 160). After Defendant Rossomanno gave a dispersal order, officers continued to allow citizens to move freely around the area, including individuals walking their dogs, pushing baby strollers, and just curiously observing the police activity. (ECF No. 75-6 at 11-12). These individuals were then kettled without warning and prevented from leaving. (*Id*. at 12, 14).

Emails produced as part of a federal investigation of these events show that officers were informed ahead of time that they would be deployed wearing military-like tactical dress that would both conceal their identities and encourage militaristic police behavior at a peaceful protest. (ECF No. 75, ¶ 96). All Supervisory Defendants directly supervised officers in such dress as they violated Mr. Faulk's civil rights. (*Id*.).

The violations planned, ordered, and carried out by Defendants as described above caused Mr. Faulk significant harm. First, Mr. Faulk was seized by four lines of SLMPD officers who slowly boxed him and others in at the intersection of Washington and Tucker. (ECF No. 75, ¶ 144). This seizure took place without probable cause. Mr. Faulk was then shoved from behind by an officer and pushed into the street by officers using their riot shields to direct him. (*Id.* at ¶ 153). Then, one SLMPD officer struck Mr. Faulk in the genitals as several others jumped on top of him. (*Id.* at ¶ 154). At no point did he resist. (*Id.*). Now on the ground, Mr. Faulk felt an SLMPD officer use his boot to press Mr. Faulk's head into the asphalt of the street. (*Id.* at ¶ 156). Soon thereafter, another officer sprayed him directly in the face with pepper spray. (*Id.* at ¶ 157). His hands were then bound tightly with zip ties as another SLMPD officer scrolled through his phone and turned his phone off. (*Id.* at ¶¶ 158-59). Defendant Wismar was one of these officers using force against Mr. Faulk. (*Id.* at ¶ 160). Mr. Faulk was then arrested by Defendant Wismar. (*Id.*). Mr. Faulk was brought to City jail, where he was detained until 1:30 the following afternoon. (*Id.* at ¶¶ 160-174).

## PROCEDURAL HISTORY

On August 6, 2019, Mr. Faulk filed his Fourth Amended Complaint, which makes identical claims to the prior complaint except that it adds the City of St. Louis as a defendant for Mr. Faulk's state law "assault and battery" claim. (ECF No. 75). There was no change from the Third Amended Complaint to the Fourth Amended Complaint with respect to Defendant Wismar.

Defendant Wismar asks this Court to dismiss Counts IV, VI, VII, VIII, IX, and X for failure to state a claim. The arguments made by Defendant Wismar for four of those Counts (IV, VII, VIII, and IX) are identical to the arguments made in his prior Motion to Dismiss Plaintiff's Third Amended Complaint.[1] The Court considered, and denied, these same arguments. (ECF No. 73).

_____

[1] Defendant Wismar previously moved to dismiss Counts I, II, IV VII, VIII, IX and X1 of Plaintiff's Third Amended Complaint, in a joint motion with individual Defendants Col. Gerald Leyshock, Lt. Scott Boyher, Lt. Timothy Sachs, Sgt. Randy Jemerson, Sgt. Matthew Karnowski,

Mr. Faulk acknowledges that despite the fact that the Court has ruled on some of the arguments raised by Mr. Wismar, he is renewing his objection to Count IV to ensure it is preserved, and, in keeping, Mr. Faulk renews his own arguments as to why this Court should deny this objection.

Despite the allegations in the Fourth Complaint being identical with respect to Defendant Wismar as the allegations in the Third Complaint, Defendant Wismar has developed new arguments since his Motion to Dismiss Mr. Faulk's Third Amended Complaint. Defendant Wismar now claims he is entitled to qualified immunity as to Count IV. Second, Defendant Wismar also claims, for the first time, that he is entitled official immunity as to Counts VI, VII, VIII, IX, and X.[2]  Both arguments misunderstand the application of those doctrines to Mr. Faulk's claims as pled in the Fourth Amended Complaint.

## ARGUMENT

Mr. Faulk's Complaint contains sufficient factual allegations to "raise a right to relief above the speculative level" for each count and as to each Defendant. *See Twombly*, 550 U.S. at 555. Mr. Faulk's Complaint alleges, and Defendants' sworn testimony confirms, that each Individual Defendant was himself personally involved in the deprivation of constitutional liberties that Mr. Faulk suffered on September 17, 2017.

Further, none of the individual Defendants are entitled to qualified immunity or official immunity because their actions violated clearly established law and were undertaken in bad faith.

## I.   Mr. Faulk has Sufficiently Pled all of the Claims in his Fourth Amended Complaint.

---

and Sgt. Brian Rossomanno, (together, "Supervisory Defendants"). (ECF No. 55 and No. 59). In response to Mr. Faulk's Fourth Amended Complaint, however, Defendant Wismar and the Supervisory Defendants filed separate motions to dismiss. (ECF Nos. 81 and 86).
[2] Although the Supervisory Defendants argued official immunity with respect to Mr. Faulk's state law claims in their Motion to Dismiss the Third Amended Complaint, Defendant Wismar previously chose not to raise this affirmative defense.

The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) merely requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." To meet this standard and to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). As a result, "threadbare recitals" of a cause of action unsupported by any facts are insufficient. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. However, the facial plausibility standard simply requires enough factual content to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

A motion to dismiss should not be granted merely because a complaint does not state with precision every element of the claim necessary for recovery. *Roberts v. Walmart Stores, Inc.*, 736 F.Supp. 1527, 1528 (E.D. Mo. 1990). Further, in determining whether the facial plausibility standard has been met, the court must accept all of the plaintiff's factual allegations as true and draw all inferences in the plaintiff's favor. *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). Documents attached to or incorporated within a complaint are part of the pleadings and may be considered by the Court when determining whether a plaintiff has stated a plausible claim. *Id.* (citing *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459-60 (8th Cir. 2010)). Thus, the Supreme Court has stated that a court can only dismiss a complaint "if it is clear that *no* relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### A. Mr. Faulk Alleged Sufficient Facts to State a Claim Against Officer Wismar for Conspiracy Under § 1983 (Count IV).

Plaintiff has pled sufficient facts to state a § 1983 conspiracy claim. To establish a claim under § 1983, a plaintiff must allege that (1) the officers conspired to deprive the plaintiff of a constitutional right; (2) at least one co-conspirator engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured the plaintiff. *Helmig v. Fowler*, 828 F.3d 755, 763 (8th Cir. 2016) (citing *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)). At the outset, a complaint need only allege facts "suggesting such a meeting of the minds" in order to state a claim. *See Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) (citing *White v. Walsh*, 649 F.2d 560, 561-62 (8th Cir. 1981)).

Plaintiff's Complaint contains facts to indicate a meeting of the minds existed among the Supervisory Defendants. Specifically, Mr. Faulk alleged that Defendants Leyshock, Sachs, Jemerson, and Rossomanno conspired to design and implement the illegal kettling plan, with the intent to unlawfully arrest and use excessive force against protestors. (ECF No. 75, ¶ 216). Defendant Sachs came up with the specific plan to arrest everyone present, which included Mr. Faulk. (*Id*. at ¶¶ 52, 114). Defendant Leyshock, as incident commander, approved the plan. (*Id*. at ¶¶ 12, 42). Defendants Boyher, Jemerson, Karnowski, and Rossomanno were all physically present at and were responsible for implementing the illegal kettling of peaceful citizens. (*Id*. at ¶¶ 13, 15, 16, 17, 47, 50, 63, 76-77, 113). Defendant Wismar, who was present at the protest, then followed the orders of Boyher and Karnowski to participate in illegally kettling peaceful citizens. (Id. at ¶ 77). In fact, Defendant Wismar agreed to use force and make arrests despite knowing there was no legal justification for doing so.  (*Id.* at ¶ 13).

Indeed, how else could it be possible that four separate groups of police officers converged on a single intersection in downtown St. Louis on a Sunday night? To imagine that such a choreographed action does not result from a "meeting of the minds" defies logic. Thus, accepting all of the plaintiff's factual allegations as true and draw all inferences in the plaintiff's favor, Mr.

Faulk has sufficiently alleged the individual defendants conspired to violate his constitutional rights and that Defendant Wismar participated in that conspiracy.

The second element of conspiracy is also met, because Mr. Faulk has pled facts showing that at least one co-conspirator committed an overt act in furtherance of the conspiracy. Specifically, at the direction of Defendants Leyshock and Sachs, SLMPD officers formed four separate lines from the North, South, East, and West of the intersection of Washington and Tucker to converge and form a kettle. (ECF No. 75, ¶¶ 136-141). Defendant Boyher directed officers who were carrying bicycles to form a line extending across all of the street and sidewalk on Washington Avenue one half block east of Tucker Boulevard. (*Id*. at ¶¶ 61-62). Defendant Karnowski and officers under his command "'push[ed] protestors north' toward Washington Avenue and Tucker Boulevard." (*Id*. at ¶ 50). Defendants Boyher and Karnowski directed the officers to use force against Mr. Faulk and others, and Defendant Karnowski supervised unlawful arrests. (*Id*. at ¶¶ 77). Defendant Wismar then used force against Mr. Faulk and was the arresting officer of record. (Id. at ¶ 160). Thus, Mr. Faulk has pled facts showing even more than one co-conspirator committed acts in furtherance of the conspiracy, and he has sufficiently pled the second element.

Finally, there is more than sufficient evidence pled that the conspiracy injured Mr. Faulk. Specifically, despite showing police officers his press credentials, Mr. Fault was surrounded by police, tackled, struck with a baton, and pepper sprayed in the face from less than two feet away while being held down by police officers. (ECF No. 75, ¶¶ 128, 152-157). Thus, Defendants' conspiracy to illegally detain and arrest individuals exercising their constitutional rights led directly to Mr. Faulk's injuries.

Mr. Faulk has sufficiently alleged facts that, accepted as true, allow the court to draw the reasonable inference that Defendants are liable for conspiracy. As such, the Motion to Dismiss Count IV should again be denied.

**B.  Mr. Faulk has Alleged Sufficient Facts Supporting his State Law Tort Claims.**

Mr. Faulk raised the following state law claims in his Complaint: assault and battery (Count VI), false imprisonment (Count VII), intentional infliction of emotional distress (Count VIII), negligent infliction of emotional distress (Count IX), and conversion (Count X). The sufficiency of Plaintiff's allegations regarding the elements of his assault and battery claims, Count VI, are not in dispute. Because Mr. Faulk has sufficiently pled facts supporting each of his remaining state law claims, the Motion to Dismiss should be denied.

**False Imprisonment**

In order to sufficiently meet the elements for false imprisonment, a plaintiff need only claim "(1) the detention or restraint of one against [his] will, and (2) the unlawfulness of such detention or restraint." *Gibbs v. Blockbuster, Inc.*, 318 S.W.3d 157, 169 (Mo. Ct. App. 2010). Further, "[a] defendant may be liable for false arrest if he actually arrests or restrains a person, or if he encourages, causes, promotes or instigates the arrest or restraint by another." *Taylor v. Isom*, No. 4:11-CV-1351 CAS, 2013 WL 1867106, at *24 (E.D. Mo. May 2, 2013).

Plaintiff pled facts showing he was detained against his will. Specifically, that he was unable to leave the area of the kettling, despite asking officers to be permitted past their lines. (ECF No. 75 at ¶¶ 64, 66, 67-69, 73, 75, 143-45). He was subsequently surrounded by police officers, including Defendant Wismar, who then tackled him, struck him with a baton, and pepper sprayed him in the face from less than two feet away while he was being held down. (*Id*. at ¶¶ 128, 152-157). Mr. Faulk was not doing anything illegal and did not hear any dispersal order. (*Id*. at ¶¶ 138). Defendant Wismar therefore arrested Mr. Faulk without probable cause. (*Id*. at ¶¶ 52, 160). Mr. Faulk was subsequently restrained with zip-ties then jailed for thirteen hours. (*Id*. at ¶¶ 88, 174). Thus, there are sufficient facts in the pleading that Mr. Faulk was restrained against his will.

As discussed *supra*, there are sufficient facts pled to show the kettling of Mr. Faulk and others was unconstitutional and intended to enable the police to arrest individuals despite not having probable cause. Thus, because Mr. Faulk's Complaint alleges he was unlawfully detained, and that his detention was caused by his unlawful arrest by Defendant Wismar, Defendant Wismar's Motion to Dismiss Count VII should again be denied.

<u>**Intentional Infliction of Emotional Distress**</u>

A claim for Intentional Infliction of Emotional Distress in Missouri merely requires a plaintiff to allege (1) the Defendants' conduct was extreme and outrageous; (2) the conduct was intentional or done recklessly; and (3) the conduct caused severe emotional distress that results in bodily harm. *Thornburg v. Fed. Express Corp.*, <u>62 S.W.3d 421, 427</u> (Mo. Ct. App. 2001).

Mr. Faulk's Complaint alleges a series of intentional and reckless actions by the Defendant Wismar that is extreme and outrageous. First, the Complaint alleges that Defendant Wismar, among others, indiscriminately kettled and deployed chemical agents on peaceful and compliant citizens repeatedly and without warning, including Mr. Faulk. (<u>ECF No. 75</u>, ¶¶ 71, 80, 115, 117, 119(c), 147-165). Officers including Defendant Wismar tackled Mr. Faulk, knocked him to the ground and forcefully restrained his arms and legs despite Mr. Faulk's compliance at all times. (*Id.* at ¶ 154). Either Defendant Wismar or one of the John Does used his boot to press Plaintiff's head against the pavement. (*Id.* at ¶ 156). Officers pepper sprayed Plaintiff while he was already on the ground complying with commands and not resisting. (*Id.* at ¶ 157). Thus, there is sufficient evidence pled in the Complaint that the actions of the police department, including Defendant Wismar, was extreme and outrageous.

Further, Mr. Faulk has pled facts that these actions were intentional. The kettling and arrests were done despite the fact that, according to Defendant Sachs, no property damage had

occurred in the relevant area in the roughly 3-4 hours before the kettling arrests. (ECF No. 75, ¶ 112). During and after the arrests, officers were observed high fiving each other, smoking celebratory cigars, taking selfies on their personal phones with arrestees against the arrestees' will, and chanting "Whose Streets? Our Streets!" (*Id*. at ¶¶ 90, 163). Further, after the unlawful arrest of dozens of citizens, a celebratory photo of the Civil Disobedience Team was posted to social media with the caption "SLMPD CDT Team welcomes protesters." (*Id*. at ¶ 91). Taking these facts as true, and making all reasonable inferences in favor of Mr. Faulk, it is clear that he has pled sufficient facts to show that the actions of the Defendants were intentional.

Finally, Mr. Faulk alleges in his complaint that he suffered injuries as a result of his kettling and unlawful arrest. Those injuries include psychological difficulties that required Mr. Faulk to take a four-month medical leave to address the trauma associated with his kettling and unlawful arrest. (ECF No. 75, ¶¶ 181, 183). In addition to the psychological and emotional harms, Mr. Faulk suffered physical injury, lost time, loss of employment opportunity, and loss of faith in society. (*Id*. at ¶ 254).

Because Plaintiff sufficiently pled that Officer Wismar participated in extreme or outrageous intentional conduct that caused Mr. Faulk to suffer severe emotional distress that resulted in bodily harm, Defendants' Motion to Dismiss Count VIII should again be denied.

### Negligent Infliction of Emotional Distress

The Missouri Supreme Court has held that a plaintiff must merely show that (1) the Defendant should have realized that its conduct involved an unreasonable risk of causing the distress and (2) the resulting emotional distress or mental injury is medically diagnosable and sufficiently severe to be medically significant. *Gibson v. Brewer*, 952 S.W.2d 239, 248-49 (Mo.

1997). Because Mr. Faulk has asserted factual allegations to satisfy each element of Negligent Infliction of Emotional Distress, Defendant Wismar's Motion to Dismiss should be denied.

Defendant Wismar participated in activities that he should have realized posed an unreasonable risk of causing severe and medically diagnosable distress or mental injury to Mr. Faulk. Specifically, Mr. Faulk alleges that officers including Defendant Wismar tackled him, knocked him to the ground and forcefully restrained his arms and legs despite Mr. Faulk's compliance at all times. (ECF No. 75, ¶ 154). At least one officer used his boot to press Plaintiff's head against the pavement. (*Id*. at ¶ 156). Officers pepper sprayed Plaintiff while he was already on the ground complying with commands and not resisting. (*Id*. at ¶ 157). Even if Defendants were previously unaware of the potential for such actions to cause severe and medically diagnosable distress or mental injury, they should have been made aware upon the Eastern District of Missouri's granting of a Temporary Restraining Order three years earlier. (ECF No. 75-1, Temporary Restraining Order in *Templeton v. Dotson*, No. 4:14-cv-02019, at *3 (E.D. Mo. Dec. 11, 2014)).

As a result of the above actions by Defendant Wismar and his fellow Officers, Mr. Faulk was reasonably in fear for his own person and suffered emotional distress or mental injury that is medically diagnosable and sufficiently severe to be medically significant (ECF No. 75, ¶ 261). Specifically, Mr. Faulk suffers psychological difficulties, including nightmares, as a result of his kettling and unlawful arrest. (*Id*. at ¶ 181). Plaintiff took a four-month medical leave to address the trauma associated with his kettling and unlawful arrest. (*Id*. at ¶ 183).

Both of the elements of Negligent Infliction of Emotional Distress are sufficiently pled and Defendants' motion as to Count IX should again be denied.

## Conversion

To succeed on a claim of conversion, Plaintiff must merely show that "(1) he owned the property or was entitled to possess it; (2) the defendant took possession of the property with the intent to exercise some control over it; and (3) the defendant thereby deprived the plaintiff of the right to possession." *Hunt v. Estate of Hunt*, 348 S.W.3d 103, 113 (Mo. 2011).

Mr. Faulk alleged that he is the owner of a $200 bicycle that he rode while reporting the events of September 17, 2017. (ECF No. 75, ¶ 267). Police officers, under the direction of the Supervisory Defendants, seized and took possession of Mr. Faulk's bicycle without his permission. (*Id*. at ¶¶ 267, 269). Despite Mr. Faulk's demands to return the bicycle to him, Defendants continue to deprive Mr. Faulk of the right of possession of his property. (*Id*. at ¶¶ 270-272). Defendants' bad-faith and malicious seizure of Mr. Faulk's bicycle resulted in damages for the purchase value of the bicycle and loss of use of the bicycle. (*Id*. at ¶¶ 276-277). As the arresting officer, Defendant Wismar did play a role in seizing Mr. Faulk's property at the time of arrest. Mr. Faulk and the Defendants are engaged in discovery efforts identifying which specific police officers were involved in depriving Mr. Faulk of his property, and if this investigation shows Defendant Wismar played no role in the seizure of the bicycle, Mr. Faulk will amend his complaint to identify the correct officer.

Because Mr. Faulk sufficiently pled each of the above allegations, Defendant Wismar's Motion to Dismiss as to Count X should again be denied.

## II.   Defendant Wismar Is Not Entitled to Official Immunity in Counts VII, VII, IX or X.

Official immunity does not apply to cases involving bad faith or with malice. *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015); *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. banc 1986). Rather, the purpose of official immunity is to protect public officials from

liability for acts of ordinary negligence committed during the course of their official duties. *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. 2006). Thus, a defendant in "bad faith," is not protected by official immunity, when he consciously breaches a known duty through some ulterior motive. *Twiehaus*, 706 S.W.2d, 447. Further, a defendant acts with malice and is not protected by official immunity "when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Davis*, 794 F.3d at 1013 (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. banc 1986)). When the record shows intentional wrongdoing, ulterior motives, or ill will, police defendants cannot claim official immunity. *Conway v. St. Louis Cnty*, 254 S.W.3d 159, 165 (Mo. App. 2008).

Here, Mr. Faulk's Complaint alleges facts sufficient on their face to show bad faith or malice. Defendant Wismar is not entitled to dismissal based on official immunity when the facts pled clearly show that Defendant Wismar took actions he knows were contrary to his duty as a public servant and which he intended to be injurious to Mr. Faulk. Mr. Faulk alleged that the SLMPD officers who assaulted and arrested him acted with "malice" and "actual, wanton intent to cause injury." (ECF No. 75, ¶ 248). Mr. Faulk alleged that police officers, including Defendant Wismar, who were on the arresting team physically assaulted him while he was not resisting. (*Id.* at ¶ 159). Mr. Faulk further alleged police officers, including Defendant Wismar, singled out members of the media such as Mr. Faulk. (*Id.* at ¶ 153) and that the arresting team then conducted an illegal search of Mr. Faulk's phone. (*Id.*). Defendant Wismar and other police officer's knowledge that their actions were in violation of citizens' constitutional rights is further evidenced by Mr. Faulk's allegations that their social media post bragging that, "SLMPD CDT Team welcomes protesters [sic]." (*Id.* at ¶ 91).

Because Mr. Faulk alleged facts on its face supporting that Defendants were acting with malice and contrary to their duties as officers, Defendants are not entitled to dismissal based on official immunity.

**III.   Neither the Intracorporate Conspiracy Doctrine nor Qualified Immunity Bars Mr. Faulk's Claim that the Defendants Conspired to Deprive him of his Civil Rights**

Defendant Wismar argues again that Mr. Faulk cannot bring a claim against him for conspiracy to violate his civil rights under § 1983 both because of the intracorporate conspiracy doctrine, a claim this Court previously rejected, and now because Defendant Wismar argues the doctrine of qualified immunity should prevent his liability. Both these arguments misunderstand and misapply these doctrines.

Mr. Faulk's claims are not barred by the intracorporate conspiracy doctrine. First and foremost, the Eighth Circuit has never held the doctrine is applicable to § 1983 claims. *Powers v. City of Ferguson,* 229 F.Supp.3d 894, 905 (E.D. Mo. 2017). Defendant Wismar offers no authority for the application of the intracorporate conspiracy doctrine to § 1983 conspiracy claims and, as he himself acknowledges, relies solely on case law raising that defense under § 1985.[3] (ECF No. 89 at 8).

Further, courts in this circuit have repeatedly denied motions to dismiss based on the intracorporate conspiracy doctrine in § 1983 cases. *Powers v. City of Ferguson*, 229 F.Supp.3d 894, 897 (E.D. Mo. 2017); *Golden v. Moutray,* 2018 U.S. Dist. LEXIS 62828, at *11 (E.D. Mo. April 13, 2018); *Anzaldua v. Northeast Ambulance & Fire Prot. Dist.,* 2014 U.S. Dist. LEXIS 14568, at *8 (E.D. Mo. Feb. 5, 2014). Because the purpose of the intracorporate conspiracy

---

[3] Defendants cite *Cross v. Gen. Motors Corp.*, 721 F.2d 1152 (8th Cir. 1983), *L.L. Nelson Enters., Inc. v. County. of St. Louis, Mo.*, 673 F.3d 799 (8th Cir. 2012), and *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070 (8th Cir. 2016), all conspiracy cases under 42 U.S.C. § 1985.

doctrine is to shield corporations from liability for "routine, collaborative business decisions," several courts have held that allegations of police misconduct or excessive force are not protected; finding that "conspiracies and cover-ups are not the product of routine police department decisions-making." *Pinell v. City of Gerald, Mo.,* 2018 U.S. Dist. LEXIS 45957, at *24 (E.D. Mo. Mar. 21, 2018); *Howard v. City of Chicago,* 2004 U.S. Dist. LEXIS 21537, at *33-34 (N.D. Ill. Oct. 25, 2004); *Golden,* 2018 U.S. Dist. LEXIS 62828, at *11; *Newsome v. James,* 2000 U.S. Dist. LEXIS 5678, at *46 (N.D. Ill. April 26, 2000).

And, even if the doctrine applies, this is not the correct stage to consider the doctrine. Courts have held that because of the standard of review on motions to dismiss "the interests of justice are not best served by considering the intracorporate conspiracy doctrine at this pre-evidentiary stage" in § 1983 conspiracy cases. *Golden*, 2018 WL 1784395 at *11 (citing *Powers*, 229 F. Supp. 3d 894, 904–05 (E.D. Mo. 2017); *Anzaldua*, 2014 WL 46234, at *8 (aff'd in part, rev'd in part on other grounds and remanded, 793 F.3d 822 (8th Cir. 2015)).

The police officers' behavior involves illegal and unconstitutional actions. As such, the officers cannot be considered to have been acting within the scope of their employment or conducting routine activities and the intracorporate conspiracy doctrine does not shield the Defendants from liability. Further, given the early stage of this litigation, and the lack of discovery on the matter, even if the Court were inclined to consider the applicability of this doctrine to the facts here, the court should defer such analysis until the summary judgment stage. Defendant Wismar's Motion to Dismiss based on the intracorporate conspiracy doctrine should be denied.

Defendant Wismar's arguments that the doctrine of qualified immunity requires a dismissal of Count IV is also made in error. To begin, a plaintiff is not required to plead facts in his complaint that might be responsive to an affirmative defense. *Smith v. Grifols USA,* 2016 U.S. Dist. LEXIS

20

29081, at *17 (E.D. Mo. March 8, 2016) (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007)). Qualified immunity is an affirmative defense, to be upheld in a motion to dismiss only when the immunity can be established "on the face of the complaint." *Bradford v. Huckabee*, 330 F.3d 1038, 1041 (8th Cir. 2003). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996) (quoting *McCormack v. Citibank, N.A.*, 979 F.2d 643, 646 (8th Cir. 1992) and *Conley v. Gibson*, 355 U.S. 41, 45-46, (1957)). Here, Defendant Wismar's claims of qualified immunity cannot be established on the face of the complaint and therefore cannot form the basis of a motion to dismiss.

The law is clear that an officer is not entitled to qualified immunity if the officer violated a constitutional right and the violated right was clearly established. *Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017) (citing *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012)). As discussed above, Mr. Faulk has sufficiently pled facts to support a claim the individually named defendants, including Defendant Wismar, conspired to deprive him of his constitutional rights.

Further, the law regarding all of Mr. Faulk's constitutional claims was clearly established at the time of these incidents. "Clearly established" means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A plaintiff need only show that defendants were on "fair warning" that their actions were unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). To be clearly established, there need not be a case decided on all fours with the present factual circumstances. *Vaughn v. Ruoff*, 253 F.3d 1124, 1129-30 (8th Cir. 2001). The test is "whether a reasonable officer could have believed [the arrest] to be lawful, in light of

21

clearly established law and the information the [arresting] officers possessed." *Gainor v. Rogers*, 973 F.2d 1379, 1382 (8th Cir. 1992) (citing *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

The Eighth Circuit has previously found qualified immunity to be inappropriate when the plaintiff alleges facts that defendant police officers conspired to wrongfully arrest him without probable cause and in retaliation for protected speech. *Small v. McCrystal*, 708 F.3d 997, 1010 (8th Cir. 2013). "The question of the existence of a conspiracy to deprive the plaintiffs of their constitutional rights should not be taken from the jury if there is a possibility the jury could infer from the circumstances a 'meeting of the minds' or understanding among the conspirators to achieve the conspiracy's aims." *White*, 519 F.3d at 816 (quoting *Larson by Larson v. Miller,* 76 F.3d 1446, 1458 (8th Cir. 1996)). A reasonable police supervisor would have known that conspiring with other officers to unlawfully arrest and use excessive force on Mr. Faulk constitutes an unconstitutional act. As such, Officer Wismar is not entitled to qualified immunity.

Finally, it is worth noting that Defendant Wismar should have specifically been aware of the state of the law regarding the seizure of individuals involved in peaceful protests given that in the three years *before* the incidents involving Mr. Faulk, the Eastern District of Missouri entered a temporary restraining order and preliminary injunction in two separate cases enjoining the City from enforcing any rule, policy, or practice that grants law enforcement officials the authority or discretion to utilize "chemical agents" "for the purpose of dispersing groups of individuals who are engaged in peaceful, non-criminal activity." (ECF No. 75 ¶ 31; ECF No. 75-1, Temporary Restraining Order in *Templeton v. Dotson*, No. 4:14-cv-02019, at *3 (E.D. Mo. Dec. 11, 2014); ECF No. 75-6, Memorandum and Order of Preliminary Injunction, *Ahmad v. St. Louis*, No. 4:17-cv-02455 at *47-48 (E.D. Mo. Nov. 15, 2017). The Eastern District specifically found the plaintiffs were likely to prevail on their claim that the SLMPD "has a custom or policy of using chemical

agents without warning on citizens engaged in expressive activity that is critical of police or who are recording police in retaliation for the exercise of their first amendment rights." (ECF 75, ¶ 119; ECF No. 75-6, Memorandum and Order of Preliminary Injunction, *Ahmad v. St. Louis*, No. 4:17-cv-02455 (E.D. Mo. Nov. 15, 2017). Mr. Faulk alleges the exact same activity happened to him on September 17, 2017. (ECF No. 75, ¶ 39).

There is no basis in the Complaint for Defendant Wismar's claim of qualified immunity and the Motion to Dismiss should be denied.

## CONCLUSION

For the reasons stated above, Mr. Faulk has pleaded sufficient facts to state a claim upon which relief can be granted and Defendant Wismar is not entitled to dismissal. Therefore, Mr. Faulk respectfully requests that the Court deny Defendant Wismar's Motion to Dismiss Plaintiff's Fourth Amended Complaint in full.

Dated: September 26, 2019                    Respectfully submitted,


By: *Dave Nelson*
   David C. Nelson  (MBE #46540MO)
   Nelson and Nelson
   420 N. High St.
   Belleville, IL 62220
   618-277-4000
   314-925-1307 (fax)
   dnelson@nelsonlawpc.com


*and*

**ArchCity Defenders, Inc.**

By: /s/ *Maureen Hanlon*
   Blake A. Strode  (MBE #68422MO)
   Michael John Voss (MBE #61742MO)

Jacqueline Kutnik-Bauder (MBE #45014MO)
Frances C. Lucas (MBE #71314MO)
John M. Waldron (MBE #70401MO)
Maureen Hanlon (MBE #70990MO)
440 North 4th Street, Ste. 290
St. Louis, MO 63102
855-724-2489 ext. 1021
314-925-1307 (fax)
bstrode@archcitydefenders.org
mjvoss@archcitydefenders.org
jkutnikbauder@archcitydefenders.org
jwaldron@archcitydefenders.org
mhanlon@archcitydefenders.org
clucas@archcitydefenders.org
*Attorneys for Plaintiff*