## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MISSOURI EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL FAULK,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:18-cv-308 |
| **v.** | ) | |
| | ) | |
| **CITY OF ST. LOUIS, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF FAULK'S MEMORANDUM IN OPPOSITION TO DEFENDANT CITY OF ST. LOUIS' MOTION TO DISMISS

COMES NOW Plaintiff, Michael Faulk, and submits this Memorandum in Opposition to Defendant City of St. Louis's Motion to Dismiss and Memorandum in Support (ECF Nos. 84, 85).

### INTRODUCTION

On the night of September 17, 2017, Plaintiff Michael Faulk, a St. Louis Post-Dispatch reporter, was reporting on protests against police violence in the St. Louis area when he was surrounded by officers of the St. Louis Metropolitan Police Department (Police Department), pepper sprayed, assaulted, and arrested. (ECF No. 75, ¶ 1). This incident was not isolated. The police department of the City of St. Louis had been involved in at least two federal lawsuits involving similar facts in the three years prior to their violation of Mr. Faulk's constitutional rights. (ECF No. 75-1, Temporary Restraining Order in *Templeton v. Dotson*, No. 4:14-cv-02019, at *3 (E.D. Mo. Dec. 11, 2014); ECF No. 75-6, Memorandum and Order of Preliminary Injunction, *Ahmad v. St. Louis*, No. 4:17-cv-02455 (E.D. Mo. Nov. 15, 2017)).

Those prior lawsuits specifically related to the City police department's use of excessive force against citizens peacefully exercising their First Amendment rights and its practice of

arresting people without probable cause. Despite a temporary restraining order and consent decree in one case, and a preliminary injunction in another, the City's police department continued to indiscriminately use chemical agents against peaceful, non-criminal protestors without warning. (ECF No. 75, ¶¶ 34-37).

This action was filed after Mr. Faulk was assaulted and unlawfully arrested by the City police department. Pending before the Court is a Motion to Dismiss filed by the City alleging Mr. Faulk has failed to sufficiently plead his *Monell* claims and that it is entitled to dismissal based on the intracorporate conspiracy doctrine and sovereign immunity (ECF No. 85).

The Court should deny Defendant's Motion to Dismiss because Mr. Faulk has pled sufficient facts, including the facts relating to prior litigation discussed above, to "state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, Defendant's claim of intracorporate conspiracy doctrine fails because the police officers were not acting within the scope of their employment when they violated his constitutional rights. *Pinell v. City of Gerald, Mo.*, 2018 U.S. Dist. LEXIS 45957, at *8 (E.D. Mo. Mar. 21, 2018) (the doctrine is inapplicable when the actions of an employee do not involve routine, collaborative decisions). Finally, the City waived any claims to sovereign immunity as a result of its participation in the Public Facilities Protection Corporation (PFPC) self-insurance program. *See State v. Rel. Bd. of Trustees of Cty. Of Kansas Cty. Mem'l Hosp. v. Russell*, 843 S.W.2d 353, 360 (Mo. 1992).

### STATEMENT OF FACTS

The Fourth Amended Complaint contains the following factual allegations:

On the night of September 17, 2017, Plaintiff Michael Faulk, an award-winning journalist working for the St. Louis Post-Dispatch, was reporting on protests against police violence in the St. Louis area when he was surrounded by officers of the St. Louis Metropolitan Police

Department, pepper sprayed, assaulted, and arrested. (ECF No. 75, ¶ 1). Mr. Faulk had been covering the wave of protests following the acquittal of former SLMPD Officer Jason Stockley for killing Anthony Lamar Smith. (*Id.* at ¶¶ 1, 121-22, 125-27). Despite showing police officers his press credentials, Mr. Faulk was surrounded by police, tackled, struck with a baton, and pepper sprayed in the face from less than two feet away while being held down by police officers. (*Id.* at ¶¶ 128, 152-157).

Three years earlier, during the protests after the Michael Brown grand jury decision, the City Police Department was involved in similar incidents where its officers indiscriminately used chemical agents against protestors without warning. (ECF No. 75, ¶¶ 29-31). On December 11, 2014 a federal judge in the Eastern District of Missouri issued a temporary restraining order restraining the Police Department from enforcing any rule, policy, or practice that grants law enforcement officials the authority or discretion to:

1. utilize tear gas, inert smoke, pepper gas, or other chemical agents (collectively, "chemical agents") for the purpose of dispersing groups of individuals who are engaged in peaceful, non-criminal activity in the City of St. Louis or in the County of St. Louis

   a. without first issuing clear and unambiguous warnings that such chemical agents will be utilized;

   b. without providing the individuals sufficient opportunity to heed the warnings and exit the area;

   c. without minimizing the impact of such chemical agents on individuals who are complying with lawful law enforcement commands; and

   d. without ensuring that there is a means of safe egress from the area that is available to the individuals; and

2. utilize chemical agents on individuals engaged in peaceful, non-criminal activity in the City of St. Louis or in the County of St. Louis for the purpose of frightening them or punishing them for exercising their constitutional rights.

ECF No. 75-1, Temporary Restraining Order in *Templeton v. Dotson*, No. 4:14-cv-02019, at *3

(E.D. Mo. Dec. 11, 2014)).

The City of St. Louis entered into a subsequent settlement agreement on March 25, 2015—

two-and-a-half years before Mr. Faulk was pepper sprayed, assaulted and arrested—agreeing not

to enforce any rule, policy or practice that grants law enforcement officials the authority or

discretion to:

1. utilize tear gas, inert smoke, pepper gas, or other chemical agents (collectively, "chemical agents") for the purpose of dispersing groups of individuals who are engaged in non-criminal activity:

   a. without first issuing clear and unambiguous warnings that such chemical agents will be utilized;

   b. without providing the individuals sufficient opportunity to heed the warnings and exit the area;

   c. without reasonably attempting to minimize the impact of such chemical agents on individuals who are complying with lawful law enforcement commands; and

   d. without ensuring that there is a means of safe egress from the area that is available to the individuals and announcing this means of egress to the group of individuals.

2. utilize chemical agents on individuals engaged in non-criminal activity for the purpose of frightening them or punishing them for exercising their constitutional rights.

(ECF No. 75-2, ¶ 35; Settlement Agreement in *Templeton v. Dotson*, No. 4:14-cv-02019

(E.D. Mo. Mar. 25, 2015) at 1-2).

Less than two months after entering into this Consent Decree, SLMPD began to violate the

Decree by indiscriminately using chemical agents against peaceful, non-criminal protestors

without warning. (ECF No. 75, ¶¶ 34-37).

This pattern and practice of utilizing chemical agents on individuals engaged in peaceful,

non-criminal activity continued on September 17, 2017, the night Mr. Faulk was pepper sprayed,

assaulted and arrested. (ECF No. 75, ¶ 39). On that evening, four lines of police officers surrounded residents, protestors, business people and members of the press like Mr. Faulk, forcing them into a one-block area at Washington Avenue and Tucker Boulevard. (*Id.* at ¶¶ 57-69). The officers, wearing full riot gear, began banging batons against their riot shields and the street in unison. (*Id.* at ¶ 65).

The officers refused to allow anyone to leave, cutting off all means of egress including alleys and sidewalks. (ECF No. 75, ¶¶ 57-64). Defendants Boyher and Karnowski directed the officers under their command, including Defendant Wismar, to use force against the peacefully assembled people. (*Id.* at ¶¶ 77, 80). Video from that day shows that none of the individuals inside the kettle were acting violently or aggressively. (*Id.* at ¶ 80). Regardless, police officers indiscriminately and repeatedly doused with chemical agents without warning, in some cases even removing goggles worn by individuals in order to spray them directly in the face. (*Id.* at ¶ 80).

At a subsequent preliminary injunction hearing resulting from these incidents, a federal judge in the Eastern District of Missouri granted the preliminary injunction finding, among other things, that:

> d.  Similarly, Plaintiffs have presented sufficient evidence demonstrating that they are likely to prevail on their claim that defendant's custom or policy is to permit officers to issue vague dispersal orders to protesters exercising their first amendment rights in an arbitrary and retaliatory way and then to enforce those dispersal orders without sufficient notice and opportunity to comply before being subjected to uses of force or arrest, in violation of Plaintiffs' First and Fourth Amendment rights.
>
> e.  Plaintiffs presented sufficient, credible evidence for purposes of awarding preliminary injunctive relief that defendant has a custom or policy, in the absence of exigent circumstances, of issuing dispersal orders to citizens engaged in expressive activity critical of police which are either too remote in time and/or too vaguely worded to provide citizens with sufficient notice and a reasonable opportunity to comply, inaudible and/or not repeated with sufficient frequency and/or by a sufficient number of officers to provide citizens with sufficient notice and a reasonable opportunity to comply, contradictory and inconsistent, not uniformly enforced, and retaliatory.

f. Plaintiffs have also presented sufficient evidence demonstrating that they are likely to prevail on their claim that defendant has a custom or policy of using chemical agents without warning on citizens engaged in expressive activity that is critical of police or who are recording police in retaliation for the exercise of their first amendment rights, in violation of the First, Fourth, and Fourteenth Amendments.

g. Plaintiffs have presented sufficient, credible testimony and video evidence from numerous witnesses that they were maced without warning in the absence of exigent circumstances while they were not engaging in violent activity and either were not in defiance of police commands (because none were given) or were complying with those commands.

h. The City's custom or policy of authorizing the use of hand-held mace against non-violent protesters with no warning or opportunity to comply and in the absence of probable cause or exigent circumstances impermissibly circumvents the protections afforded by the *Templeton* settlement agreement and vests individual officers with unfettered discretion to exercise that authority in an arbitrary and retaliatory manner in violation of constitutional rights.

i. Plaintiffs' evidence — both video and testimony — shows that officers have exercised their discretion in an arbitrary and retaliatory fashion to punish protesters for voicing criticism of police or recording police conduct. When all of the evidence is considered, plaintiffs have met their burden of showing that they are likely to succeed on their claim that defendant has a custom or policy of deploying hand held pepper spray against citizens engaged in recording police or in expressive activity critical of police in retaliation for the exercise of their first amendment rights, in violation of the First, Fourth, and Fourteenth Amendments.

(ECF 75, ¶ 119; ECF No. 75-6, Memorandum and Order of Preliminary Injunction, *Ahmad v. St. Louis*, No. 4:17-cv-02455 (E.D. Mo. Nov. 15, 2017) (internal quotations omitted)).

On November 29, 2018, four SLMPD officers were indicted for their actions on September 17, 2017. Emails quoted in the indictment show the officers were informed ahead of time they would be deployed wearing military-like tactical dress to conceal their identities in order to beat protestors. This is exactly what occurred to Mr. Faulk, under the direct supervision and control of Defendants Leyshock, Boyher, Sachs, Jemerson, Karnowski, and Rossomanno. (ECF No. 75, ¶ 96).

The notice pleading standard of <u>Federal Rule of Civil Procedure 8(a)(2)</u> merely requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." To meet this standard and to survive a <u>Federal Rule of Civil Procedure 12(b)(6)</u> motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, <u>556 U.S. 662, 678</u> (2009) (internal quotations and citation omitted). As a result, "threadbare recitals" of a cause of action unsupported by any facts are insufficient. *Iqbal*, <u>556 U.S. at 678</u>; *Bell Atlantic v. Twombly*, <u>550 U.S. 544, 555</u> (2007).

However, the facial plausibility standard simply requires enough factual content to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, <u>599 F.3d 856, 861</u> (8th Cir. 2010) (quoting *Iqbal*, <u>556 U.S. at 678</u>). A motion to dismiss should not be granted merely because a complaint does not state with precision every element of the claim necessary for recovery. *Roberts v. Walmart Stores, Inc.*, <u>736 F. Supp. 1527, 1528</u> (E.D. Mo. 1990). Further, in determining whether the facial plausibility standard has been met, the court must accept all of the plaintiff's factual allegations as true and draw all inferences in the plaintiff's favor. *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, <u>696 F.3d 766, 768-69</u> (8th Cir. 2012).

**ARGUMENT**

I.   <u>Mr. Faulk has Sufficiently Pled the *Monell* Claims in Counts I and V.</u>

In this section, Mr. Faulk makes substantively the same argument as this court previously accepted on all other parts of Counts I and V. Mr. Faulk requests the Court to rethink its order dismissing "Plaintiff's § 1983 *Monell* claims against Defendant City of St. Louis in Count V based on failure to train and supervise." (<u>ECF No. 72</u>).

Mr. Faulk's Fourth Amended Complaint alleges that the Defendant City of St. Louis, among

other things, violated his First, Fourth and Fourteenth Amendment rights by interfering with his ability to gather information and cover a matter of public interest as a member of the media and by implementing a policy or practice of using excessive force, chemical agents and unconstitutional seizures against non-violent protestors. The complaint also alleges the City failed to adequately train, supervise or discipline its police officers regarding the use of chemical agents, understanding of probable cause, use of force, and recognition of rights of members of the press. (ECF No. 75, ¶¶ 190-197, 226-231).

Defendant City's Motion to Dismiss does not address the underlying allegations themselves, but rather simply argues that Mr. Faulk has not sufficiently pled facts to support the inference that the City had a policy or practice related to these constitutional violations. This claim is patently untrue.

A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an "action pursuant to official municipal policy" or misconduct so pervasive among non-policymaking employees of the municipality "as to constitute a 'custom or usage' with the force of law." *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 691 (1978). A municipality has "custom liability" under *Monell* when the plaintiff establishes:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) The plaintiff['s] injury by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson Cty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (quoting *Jane Doe A v. Special School Dist.*, 901 F.2d 642, 646 (8th Cir.1990)).

The Eighth Circuit has recognized, however, that prior to discovery a Plaintiff "may not be privy to the facts necessary to accurately describe or identify" the policies or customs which caused

the deprivation of their constitutional right. *Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d 842, 867 (D. Minn. 2015) (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)). Thus, the Court has held a plaintiff is not required to identify the full scope of an alleged custom or policy to survive a Motion to Dismiss. *Id.* A plaintiff need only include "allegations, reference or language from which one could *begin to draw* an inference that the conduct complained of resulted from an unconstitutional policy or custom." *Teague v. St. Charles Cty.*, 708 F. Supp. 2d 935, 940 (E.D. Mo. 2010) (citing *Crumpley–Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004)) (emphasis added).

Further, a municipality is liable under *Monell* for failure to train its employees when its failure evidences a deliberate indifference to its residents' constitutional rights, and the training deficiencies caused the deprivation of the plaintiff's constitutional rights. *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citing *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)). Similarly, a municipality is liable under *Monell* for failure to supervise its employees when its failure evidences a deliberate indifference to or tacit authorization of violations of residents' rights, and the plaintiff's constitutional rights are violated as a result. *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998) (citing *White v. Holmes*, 21 F.3d 277, 280 (8th Cir.1994)).

While Mr. Faulk will likely have more specific facts after discovery, the facts in the Fourth Amended Complaint state a plausible claim for relief under *Monell*. To begin, the complaint alleges Defendant has a long history of responding with excessive force to protestors who are invoking their First Amendment rights. Specifically, that at least as early as 2014, the City was involved in a minimum of three incidents where police indiscriminately used chemical agents against protestors without warning, without giving individuals an opportunity to comply with any instructions, without mitigating the impact of the use of chemical agents, and without ensuring a safe means of egress for people attempting to comply with police instructions. (ECF No. 57-2, ¶¶

29-31; <u>ECF No. 85</u> ¶ 31; <u>ECF No. 75-1</u>, Temporary Restraining Order in *Templeton v. Dotson*, No. 4:14-cv-02019, at \*3 (E.D. Mo. Dec. 11, 2014)).

The above actions by the City led a federal judge in the Eastern District of Missouri to enter a temporary restraining order—almost three years *before* the assault on Mr. Faulk—restraining the City from enforcing any rule, policy, or practice that grants law enforcement officials the authority or discretion to utilize "chemical agents" "for the purpose of dispersing groups of individuals who are engaged in peaceful, non-criminal activity." (<u>ECF No. 75</u> ¶ 31; <u>ECF No. 75-1</u>, Temporary Restraining Order in *Templeton v. Dotson*, No. 4:14-cv-02019, at \*3 (E.D. Mo. Dec. 11, 2014).

Mr. Faulk's Fourth Amended Complaint also refers to and includes as an exhibit the subsequent settlement agreement entered into by the City relating to the use of force on protestors. (<u>ECF No. 75</u>, ¶ 35; <u>ECF No. 75-6</u>). In that settlement agreement, the City agreed to remedy the violations outlined in the temporary restraining order. (<u>ECF No. 75</u>, ¶ 35; <u>ECF No. 75-6</u> Settlement Agreement in *Templeton v. Dotson*, No. 4:14-cv-02019, at \*1-2 (E.D. Mo. Mar. 25, 2015). The City agreed to not enforce any rule, policy or practice that grants law enforcement officials the authority or discretion to use chemical agents for the purpose of dispersing groups of individuals engaged in non-criminal activities or "for the purpose of frightening them or punishing them for exercising their constitutional rights." (<u>ECF No. 75</u>, ¶ 35; <u>ECF No. 75-6 at 1-2</u>).

Further, the complaint alleges that less than two months after entering into the Consent Decree, the police department began to violate its terms by indiscriminately using chemical agents against peaceful, non-criminal protestors without warning. (<u>ECF No. 75</u>, ¶¶ 34-37). This statement is supported in the complaint by transcript testimony from *Ahmad v. St. Louis*, No. 4:17- cv02455, at 69 (E.D. Mo. Oct. 18, 2017). (<u>ECF No. 75-3</u>). This testimony ultimately led the Eastern District of Missouri to conclude the plaintiffs were likely to prevail on their claim that the City "has a

custom or policy of using chemical agents without warning on citizens engaged in expressive activity that is critical of police or who are recording police in retaliation for the exercise of their First Amendment rights." (ECF 75, ¶ 119; ECF No. 75-6, Memorandum and Order of Preliminary Injunction, *Ahmad v. St. Louis*, No. 4:17-cv-02455 (E.D. Mo. Nov. 15, 2017). This activity is the exact same activity that Mr. Faulk alleges happened to him on September 17, 2017 (ECF No. 75, ¶ 39).

These facts from the temporary restraining order, settlement agreement and preliminary injunction provide sufficient evidence to comply with pleading requirements. The facts contained in those parts of the Fourth Amended Complaint show the City has a policy or practice of using excessive force, chemical agents and unconstitutional seizures against non-violent protestors. Further, given that the police department continued to violate protestors' constitutional rights even after the City was subject to a temporary restraining order and preliminary injunction in two separate cases, not to mention its voluntary entry into a settlement agreement, it is reasonable for the Court to infer the City was aware of the need to train, supervise and discipline its officers regarding these practices. That the police continued to participate in the same unconstitutional activity despite the court orders and settlement agreement is evidence which one could *begin to draw* an inference, the standard required by the 8th Circuit, of both the City's deliberate indifference to these constitutional violations and its failure to provide adequate training, supervision and discipline on these issues.

Defendant's failure to discipline officers is further evidenced by public comments made by the Acting Chief of the SLMPD and the mayor in the days following the arrest of Mr. Faulk. (ECF No. 75, ¶ 94-95). Thus, the facts alleged in the Fourth Amended Complaint are sufficient to allege the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the City's employees. Mr. Faulk therefore pled sufficient facts to state a plausible claim for *Monell*

liability against the City and the Motion to Dismiss Counts I and V should be denied.

II.      <u>Because Individual Defendants' Actions Were Not Conducted in the Scope of Their Employment, the Intracorporate Conspiracy Doctrine is Inapplicable.</u>

In this section, Mr. Faulk makes substantively the same argument as this court previously accepted on this issue. Mr. Faulk's claims are not barred by the intracorporate conspiracy doctrine. To begin, the Eighth Circuit has not determined whether the doctrine is even applicable to § 1983 claims. *Powers v. City of Ferguson,* <u>229 F.Supp.3d 894, 905</u> (E.D. Mo. 2017). Defendants offer no authority for the application of the intracorporate conspiracy doctrine to § 1983 conspiracy claims and rely solely on case law raising that defense under § 1985.[1]

Further, because the unlawful actions of the City's police officers were not in the scope of their employment, Mr. Faulk's claims of conspiracy in Count IV are not barred by the intracorporate conspiracy doctrine. The purpose of the intracorporate conspiracy doctrine is to shield corporations from liability for "routine, collaborative business decisions that are later alleged to be discriminatory." *Golden v. Moutray,* <u>2018 U.S. Dist. LEXIS 62828, at *11</u> (E.D. Mo. April 13, 2018); *Newsome v. James,* <u>2000 U.S. Dist. LEXIS 5678, at *15</u> (N.D. Ill. April 26, 2000). When the actions of the employee are not in the scope of employment or do not involve routine, collaborative decisions, the doctrine is inapplicable. *Pinell v. City of Gerald, Mo.,* <u>2018 U.S. Dist. LEXIS 45957, at *8</u> (E.D. Mo. Mar. 21, 2018). As a result, several courts have held that allegations of police misconduct or excessive force are not protected under the intracorporate conspiracy doctrine because "conspiracies and cover-ups are not the product of routine police department decisions-making." *McDorman v. Smith,* <u>2005 U.S. Dist. LEXIS 15964, at *6</u> (N.D. Ill. August 2, 2005); *Howard v. City of Chicago,* <u>2004 U.S. Dist. LEXIS 21537, at *12</u> (N.D. Ill. Oct. 25, 2004). Defendant fails to address any of the above case law, and instead relies solely on two inapposite

---

[1] *Kelly v. Cty. of Omaha,* <u>813 F.3d 1070, 1078</u> (8th Cir. 2016); *L.L. Nelson Enters., Inc. v Cty. of St. Louis, Mo.,* <u>673 F.3d 799, 812</u> (8th Cir. 2012)

decisions. (ECF No. 85, p. 7). Both cases relied on by Defendants were based primarily on a finding by the court that there was not sufficient evidence of any conspiracy at all. *Kelly v. Cty. of Omaha,* 813 F.3d 1070, 1078 (8th Cir. 2016); *L.L. Nelson Enters., Inc. v Cty. of St. Louis, Mo.,* 673 F.3d 799, 812 (8th Cir. 2012). Without any evidence of a conspiracy, the application of the intracorporate conspiracy doctrine becomes irrelevant. Further, even assuming the courts' discussion of the intracorporate conspiracy doctrine was something more than *dicta*, both decisions found the doctrine inapplicable because the defendants were acting within the scope of their employment. *L.L. Nelson Enters.,* 673 F.3d at 812 (referral of moving companies to property owners seeking to execute evictions were within the scope of employment); *Kelly,* 813 F.3d at 14-15 (penalizing plaintiff for her violations of housing codes was within the scope of employment; impropriety in the method of executing those duties that were within the scope of employment alone is insufficient to evade doctrine). Thus, even the case law cited by Defendants is consistent with the idea that where the defendant is alleged to have participated in a conspiracy that was a result of actions outside the scope of her employment, the intracorporate conspiracy doctrine is inapplicable.

Finally, at least three courts in this Circuit have held that application of the intracorporate conspiracy doctrine at the Motion to Dismiss stage is improper. *Golden v. Moutray,* 2018 U.S. Dist. LEXIS 62828, at *11 (E.D. Mo. April 13, 2018); *Powers v. Ferguson,* 299 F.Supp.3d 894, 904-05 (E.D. Mo. 2017); *Anzaldua v. Northeast Ambulance & Fire Prot. Dist.,* 2014 U.S. Dist. LEXIS 14568, at *8 (E.D. Mo. Feb. 5, 2014).

Here, the police officers' violation of Mr. Faulk's First, Fourth and Fourteenth Amendment rights clearly involves illegal and unconstitutional actions. As such, the officers cannot be considered to have been acting within the scope of their employment or conducting routine activities. Thus, the intracorporate conspiracy doctrine does not shield the City from liability.

Further, given the early stage of this litigation, and the lack of discovery on the matter, even if the Court were inclined to consider the applicability of this doctrine to the facts here, the court should defer such analysis until the summary judgment stage. Thus, the Court should deny Defendant's Motion to Dismiss Count IV.

III. <u>Defendant City of St. Louis has Waived Any Claims of Sovereign Immunity by Purchasing an Insurance Policy or Self-Insuring.</u>

This Court previously denied Defendant's claim that it had not waived sovereign immunity under as § 537.600, RS Mo 2016. Defendant now raises substantially the same argument, but cites to a different section of the same statutory scheme—§ 537.610, RS Mo 2016. Specifically, Defendant alleges that § 537.600 is limited to two exceptions to the doctrine of sovereign immunity, and doesn't include the exceptions in § 537.610 where immunity is waived with purchasing of insurance and/or self-insurance exemptions. *Id.* However, both the Missouri Court of Appeals and the Eastern District have rejected Defendant's newest argument. (<u>ECF No. 85</u>). However, because § 537.610 and § 537.600 were passed as part of the same bill, this Court must read them as a part of the same scheme to govern sovereign immunity and apply both with equal force. *See State ex rel. Evans v Brown Builders Elec. Co., Inc.*, <u>254 S.W.3d 31, 35</u> (Mo. banc. 2008); *Hovis v. Davis*, <u>14 S.W.3d 593, 596</u> (Mo. banc. 2000). Thus, the Missouri Court of Appeals, in interpreting these statutes, has read the two statutes together and held there are four exceptions to sovereign immunity, including the purchasing of insurance and/or the creation of self-insurance exception from § 537.610. *Bennartz v. City of Columbia*, <u>300 S.W.3d 251, 259</u> (Mo. Ct. App. 2009).[2]

---

[2] Specifically, *Bennartz* states:

A municipality has sovereign immunity from actions at common law tort in all but four cases: (1) where a plaintiff's injury arises from a public employee's negligent operation of a motor vehicle in the course of his employment (section 537.600.1(1)); (2) where the injury is caused by the dangerous condition of the municipality's property (section 537.600.1(2)); (3) where the injury is caused by

Defendant also argues that the Public Facilities Protection Corporation (PFPC), the city's self-insurance, does not fall within the express limits of the establishing Ordinance. (ECF No. 85). But, the Eastern District has already faced a similar sovereign immunity question and, relying on *Bennartz*, reached the opposite conclusion.  In *Perry for Brooks v. City of St. Louis, et al.*, 2019 WL 2745726, *10-*11 (E.D. Mo. 2019), the Court held sovereign immunity **was** waived by the purchase of insurance that covered the claims being brought. This Court should follow suit and reject Defendant's newest and unsupported interpretation of the sovereign immunity statutes and apply the same analysis that resulted in denial of Defendant's motion to dismiss, which is repeated below.

The Motion to Dismiss should be denied because the City has waived its sovereign immunity pursuant to Mo. Rev. Stat. § 537.610 by purchasing liability insurance and/or self-insuring, and has waived immunity by adopting a risk management insurance plan pursuant to Mo. Rev. Stat. § 537.600, through the actions of the Board of Estimate and Apportionment.

Municipalities waive sovereign immunity by purchasing liability insurance that covers the plaintiff's claim. *State v. Rel. Bd. of Trustees of Cty. Of Kansas Cty. Mem'l Hosp. v. Russell*, 843 S.W.2d 353, 360 (Mo. 1992). A plaintiff must plead specific facts establishing that the municipality waived sovereign immunity for his or her claims. *Parish v. Novus Equities Co.*, 231 S.W.3d 236, 242 (Mo. Ct. App. 2007), (citing *Hummel v. St. Charles Cty. R–3 Sch. Dist.*, 114 S.W.3d 282, 284 (Mo. App. 2003)). Here, the Fourth Amended Complaint alleges the City

---

the municipality performing a proprietary function as opposed to a governmental function (*State ex rel. Board of Trustees of the City of North Kansas City Memorial Hospital*, 843 S.W.2d 353, 358 (Mo. banc 1993)); and (4) to the extent the municipality has procured insurance, thereby waiving sovereign immunity up to but not beyond the policy limit and only for acts covered by the policy (section 537.610).

*Id.*

obtains insurance from or is self- insured through the PFPC, a not for profit corporation into which the City pays funds yearly. (ECF No. 75, ¶¶ 237-38). These statements alone, which must be accepted as true, are sufficient to state a plausible claim that the City has waived sovereign immunity. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Further, as the City is well aware, the Articles of Incorporation for the PFPC state the that purpose of the corporation is "to implement a program which will assure the continuing provision of municipal and governmental services by various public facilities and functions in the St. Louis metropolitan area which facilities are placed in jeopardy by escalating costs and exposures to exceed fiscal abilities." (Exhibit A, p. 1). This statement indicates the intent behind incorporating the PFPC was to create an insurance plan or self-insurance plan to cover the costs of judgments issued against the City of St. Louis.[3]

Such an inference is supported by the City's own documentation. The City website's accounting page explicitly states the PFPC is the City's self-insurance program. (Exhibit C, https://www.stlouismo.gov/government/departments/comptroller/services/AccountingServices. cf m). Further, City Counselor Julian Bush stated in a January 31, 2018 letter that the PFPC can be "properly thought to be self-insurance." (Exhibit B, p. 3). Finally, and most importantly, Resolution #88.095 adopted by the City's Board of Estimate and Appropriation explicitly states the PFPC program "is designed to protect the City and its related agencies against accidental loss or losses," that the PFPC "shall be responsible for the payment of *all claims*," and that "...it is the intent to insure the City against *all claims for damages*…". (Emphasis added) (Exhibit D, pp. 2-3). There is therefore more than sufficient evidence that the City of St. Louis obtains insurance from or is self-insured through the PFPC, waiving immunity from the claims brought in this suit.

---

[3] The Letter from Julian Bush responds to questions by Alderwoman Megan E. Green regarding the role of the PFPC in paying settlements involving police misconduct (Exhibit B, p. 1).

Thus, the Motion to Dismiss Counts VII, VIII, IX and X on the grounds of sovereign immunity should be denied.

## CONCLUSION

For the above stated reasons, Mr. Faulk asks that the Court deny Defendants' Motion to Dismiss.

Dated: September 26, 2019

Respectfully submitted,

By: _/s/David Nelson_____
David C. Nelson (MBE #46540MO)
Nelson and Nelson
420 N. High St.
Belleville, IL 62220
618-277-4000
314-925-1307 (fax)
dnelson@nelsonlawpc.com

*and*

**ArchCity Defenders, Inc.**

By:/s/ *Maureen Hanlon_____*
Blake A. Strode  (MBE #68422MO)
Michael John Voss (MBE #61742MO)
Jacqueline Kutnik-Bauder (MBE #45014MO)
Frances C. Lucas (MBE #71314MO)
John M. Waldron (MBE #70401MO)
Maureen Hanlon (MBE #70990MO)
440 North 4th Street, Ste. 290
St. Louis, MO 63102
855-724-2489 ext. 1021
314-925-1307 (fax)
bstrode@archcitydefenders.org
mjvoss@archcitydefenders.org
jkutnikbauder@archcitydefenders.org
jwaldron@archcitydefenders.org
mhanlon@archcitydefenders.org
clucas@archcitydefenders.org
*Attorneys for Plaintiff*