IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL FAULK, | ) |
| Plaintiff, | ) |
| v. | ) Cause No.: 4:18-cv-308-JCH |
| CITY OF SAINT LOUIS, MISSOURI, *et al.*, | ) |
| Defendants. | ) |

**PLAINTIFF MICHAEL FAULK'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Defendants' Motion requesting that this Court enter a protective order pursuant to Fed. R. Civ. P. 26(c)(1) and 30(d)(3) is puzzlingly timed. Defendants failed to meet and confer with Plaintiff in good faith before filing the motion and, indeed, failed to respond to pending inquiries from Plaintiff regarding the production of text messages until after the Motion was filed. Plaintiff Michael Faulk has not yet sent a subpoena from which Defendant Jemerson requires protection, nor did Plaintiff demand that Defendant Jemerson answer the question over his counsel's direction not to answer. Further, Defendants appear to agree that production of *some* text messages, albeit limited in topic and time, could be relevant and not burdensome. While it appears likely that the parties simply disagree on the specific scope of such a request—and that Plaintiff will have to file a forthcoming Motion to Compel—Plaintiff is still hopeful the parties can finalize good faith negotiations on the scope before taking up this Court's time with discovery disputes. Plaintiff respectfully requests this Court deny this Motion as premature.

**FACTUAL BACKGROUND**

Plaintiff Michael Faulk filed his Complaint on March 8, 2018 following his arrest. He was arrested as part of a mass arrest of civilians which occurred on September 17, 2017 during a

1

weekend of protests of the acquittal of SLMPD Officer Jason Stockley. Mr. Faulk was covering the protests as a journalist for the St. Louis Post-Dispatch. The mass arrest (colloquially referred to as the police "kettle"), and Mr. Faulk's arrest, specifically, received a great deal of attention.[1]

This Court entered a case management order in this case on August 20, 2019 (ECF No. 80), and discovery has been progressing since that time. This Court entered a protective order in this case proposed jointly by the parties to protect personal, confidential, sensitive, and private information of the parties. ECF No. 102.  On January 17, 2020, Plaintiff sent his second Request for Production. Ex. 1, Plaintiffs Second RFP. Therein, Requests 9-12 sought text messages for different individuals connected to the case, and Request 13 sought the cellular telephone numbers belonging to every officer present the evening of the mass arrest. *Id*. Defendants objected to the request for cellular telephone numbers specifically as "harassing, unduly invasive of officers' privacy, burdensome and calls for information that is irrelevant and immaterial to Plaintiff's claims in this case in that it calls for the personal telephone numbers of police officers who had no participation in Plaintiff's arrest." Ex. 2, Defs.' Response to Second RFPs.

The parties began discovery negotiations, held numerous meet and confer discussions and exchanged letters over the next months, wherein Plaintiff attempted to understand Defendants' objections and limit requests in order to reach consensus. On August 18, 2020, Plaintiff sent a letter to Defendants' counsel outlining an agreement to limit the request to meet Defendants' previously expressed concerns: specifically, limiting the request for text messages which originally related in any way to, "the Event, the Jason Stockley trial and/or the subsequent protests," to the

---

[1] *See, e.g.*, Doug Moore, *As arrests are made, protesters question the tactics used by St. Louis police*, ST. LOUIS POST-DISPATCH (Sept. 19, 2017), https://www.stltoday.com/news/local/metro/as-arrests-are-made-protesters-question-the-tactics-used-by-st-louis-police/article_e58481b7-f7c2-541e-91d2-31a6379f272c.html.

2

narrower scope of text messages sent or received during the week of Mr. Faulk's arrest by the individually-named Defendants. *Ex. 3, August 18 Letter from Plaintiff*. Plaintiff asked to hear from Defendants by August 25, 2020 with either a substantive response to the proposed text message production agreement, or to schedule a time and place for a conversation. *Id*. Defendants did not respond regarding text messages by August 25, 2020 or at any point prior to the deposition of Lieutenant Randy Jemerson.

On September 3, 2020, Plaintiff deposed Lieutenant Randy Jemerson, a Defendant in this matter.  During that deposition, Defendant Jemerson acknowledged that he used his personal cell phone during September 15-17, 2017 to communicate extensively about his role as an SLMPD officer during the Stockley protests, stating, "I mean, I get calls and texts about everything." *Ex. 4, Jemerson Deposition Exhibit,* 208:24-25, 209:1-25, 210:1-6. Defendant Jemerson also acknowledged that some SLMPD supervisors have department-issued cell phones. *Id*. at 208:15-20. Based on this answer, Plaintiff asked Defendant Jemerson for his cell phone number and carrier. *Id*. at 254:24-25, 255:1. Defendants' counsel directed Defendant Jemerson not to answer, and the deposition concluded without further action from either party. *Id*. at 255:2-11.

Plaintiff has not subpoenaed any of Defendant Jemerson's phone records. Nonetheless, one week later, Defendants filed this Motion for Protective Order. Defendants did not reach out to Plaintiff before filing the Motion, nor did Defendants respond to Plaintiff's August 18, 2020 letter before filing the Motion. Defendants. *Ex. 5, Email from Plaintiff*.  At this point, the parties have resumed negotiations.

**ARGUMENT**

Defendants' Motion for Protective Order should be denied as Defendants fail to show good cause that a protective order is needed or appropriate. The Federal Rules permit:

3

> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Discovery Rules are to be broadly and liberally construed in order to fulfill discovery's purposes of providing both parties with 'information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement.'" *Marook v. State Farm Mut. Auto. Ins. Co.*, 259 F.R.D. 388, 394 (N.D. Iowa 2009) (quotations omitted). "The federal rules confer broad discretion on the district court to decide when a protective order is appropriate and what degree of protection is required." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999).

### I.   Defendants Failed to Comply with the Meet and Confer Requirements of Rule 26(c)(1) Despite a Pending Request from Plaintiff to Meet and Confer

Under Fed. R. Civ. P. 26(c)(1), a party filing a motion for a protective order, "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Local Rule 3.04(A) lays out the same requirement for any discovery motion, but adds that the motion must, "recite the date, time and manner of such conference, and the names of the individuals participating therein, or shall state with specificity the efforts made to confer with opposing counsel." Courts in this district have made it clear that meet-and-confer requirements[2] are "not an empty formality." *Williams v. Central Transport, Intern, Inc.*, 2014 WL 6463306, *2 (E.D. Mo. 2014) (*citing Robinson v. Napolitano*,

---

[2] While the above cited cases address the meet and confer requirements prior to filing a motion to compel rather than a motion for protective order, the provision in Rule 26(a)(1) and Rule 37(c)(1) requiring a certification of good faith conferral is almost identical in language. *See also* E.D. Mo. Local Rule 3.04(A).

4

No. Civ. 08–4084(VLD), 2009 WL 1586959, *3 (D.S.D. 2009)). "Good faith" requires "a genuine attempt to resolve the discovery dispute through nonjudicial means," and "conferment" requires the parties "to have had an actual meeting or conference." *Id.* (*quoting Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D.Nev.1996)). "The entire purpose of the meet-and-confer rule is to force litigants to attempt to resolve, or at least narrow, the disputed issues to prevent the unnecessary waste of time and effort on any given motion." *Alexander v. F.B.I.*, 186 F.R.D. 197, 199 (D.D.C. 1999).

Defendants' motion contains no such certification, nor could it given the lack of communication from Defendants to Plaintiff prior to the filing of this motion. The closest Defendants' Motion comes to meeting this standard is Defendants' statement that, "Defendants intend to work with Plaintiff in good faith to determine if a reasonable compromise can be reached with regard to the scope of the communications that the Individual Defendants will produce in this matter." ECF No. 183 at 4-5. It is completely unclear to Plaintiff why, if Defendants intend to work with Plaintiff in good faith, Defendants did not do so *before* filing this motion. This is especially bewildering given that Plaintiff had specifically reached out with a proposal for the production of a limited set of text messages and Defendants failed to respond to this overture at the time of the deposition, and before the filing of this motion.

Not only did Defendants fail to comply with the rules requiring a genuine attempt to resolve the discovery dispute through nonjudicial means, Defendants also actively ignored Plaintiff's attempts to resolve the discovery dispute and instead filed their instant premature Motion. As such,

Plaintiff respectfully requests that the underlying motion be denied for failure to comply with the plain requirements of Rule 26(c)(1) and Local Rule 3.04(A).[3]

## II. Defendants Do Not Demonstrate Good Cause for Restricting Deposition Questions for Individual Defendants' Cellphone Numbers and Carriers

An order protecting disclosure or discovery is granted only upon a showing of good cause. Fed. R. Civ. P. 26(c). The party moving for the protective order has the burden to demonstrate good cause for issuance of the order. *Miscellaneous Docket Matter No. 1*, 197 F.3d at 926. In order to make the requisite showing of good cause, the moving party must make "a particular and specific demonstration of fact, as distinguished from stereotype and conclusory statements." *Heller v. HRB Tax Group, Inc.*, 287 F.R.D. 483, 485 (E.D. Mo. 2012) (*quoting Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981)).

Defendants cannot make such a showing here because their motion essentially requests this Court to rule on a hypothetical subpoena which has not been sent. Defendants ask this Court to prevent Plaintiff from seeking a cell phone number and carrier for the following reason:

> To the extent that Plaintiff requests Jemerson's personal cellphone number because he intends to subpoena call records and text messages from Jemerson's cellphone provider, this Court should first find the request overbroad and not in proportion to the needs of this litigation. A request for Jemerson's cellphone records that is unlimited in scope is overbroad because it fails to distinguish between cellphone records and communications related to Jemerson's duties as a police sergeant the night of Plaintiff's arrest and irrelevant communications made by Jemerson in his private, personal life.

ECF No. 183 at 3. Defendants offer no particular or specific argument as to why Defendant Jemerson's cellphone number or carrier presents an overly broad, burdensome, or unnecessary

---

[3] Plaintiff notes that the parties have been able to cooperate for much of discovery and, since Plaintiff's email in Exhibit 5, have resumed active communication with plans to discuss the underlying issues regarding the production of text messages in the coming week.

6

request; rather, they speculate that Plaintiff *might* use that cellphone number and carrier to send a subpoena which *might* be overbroad.

But, of course, Plaintiff has not sent a subpoena for Defendant Jemerson's cellphone records at all, let alone one which is unlimited in scope. Frankly, Plaintiff would agree that it would be unreasonable for him to request every single text message sent or received by Defendant Jemerson in his private, personal life. This is precisely why Plaintiff has not—and is not—requesting this. The pending Request for Production is for text messages sent or received by any individually-named Defendant that relates in any way to the mass arrest, the Jason Stockley trial and/or the subsequent protests. Ex. 1 at Req. No. 9. Plaintiff diligently time-limited this request initially, and then limited again to a one-week period in response to Defendants' concerns. Ex.1, Ex.5. While Plaintiff, again, has not sent a subpoena, there is not good cause to support Defendants' contention that a protective order must be issued to prevent Plaintiff from sending a subpoena to review Defendant Jemerson's personal and unrelated text messages in light of the narrow pending Request for Production.

Defendants also cannot show good cause given that courts routinely recognize that text messages sent from or to a party regarding the events of a lawsuit are both relevant and discoverable in some scope. *See RightCHOICE Managed Care, Inc. v. Hospital Partners, Inc.*, 2019 WL 3291570, *2 (W.D. Mo. 2019) ("Text messages are discoverable if they are relevant, not privileged, and in the Discovery Defendants' custody, possession, or control."); *Paisley Park Enterprises, Inc. v. Boxill*, 330 F.R.D. 226, 234-235 (D. Minn. 2019) (granting sanctions when Defendants failed to preserve text messages the Court found to be clearly relevant, noting "the contemporary world of communications … the Court is baffled as to how Defendants can reasonably claim to believe that their text messages would be immune from discovery."); *Trainer*

7

*v. Continental Carbonic Products, Inc.*, 2018 WL 3014124, *5 (D. Minn. 2018) (finding text messages sent between parties and witnesses were relevant).

Defendants rely on cases which simply reinforce the reasonableness of Plaintiff's pending request. In *Zorich*, a plaintiff learned through discovery, as Plaintiff did here, that a police officer used his personal cell phone during the course of his police business and specifically on the date in question. 2018 WL 3995689, *4 (E.D. Mo. Aug. 21, 2018). The *Zorich* Plaintiff then sought to compel communication from that device. *Id*. The Court held:

> While Rinck's communications on his personal cell phone may be relevant to Plaintiff's action, the Court recognizes Rinck's privacy interest in his personal cell phone number. In addition, the Court finds that requiring Rinck to disclose all communications on that device from 2012 through present is unduly burdensome, overbroad, and unnecessary. The Court orders Rinck to provide Plaintiff records of any communications, made on Plaintiff's personal cell phone, with either Plaintiff's neighbor or any of the defendants during the time period of April through May 2014.

*Id*. While acknowledging the officer's privacy interests, the Court found that those interests do not outweigh the relevance of communication via text messages. *Id*. The same is true here. Plaintiff acknowledges that all parties involved have reasonable expectations of privacy in written communications. But that interest is not unlimited. *Zorich* stands for the proposition that specific requests for messages which are limited by time and topic is appropriate. *Id*. That is precisely what Plaintiff requested in his Request for Production and precisely the kind of limitations Plaintiff would be happy to meet and confer with Defendants about prior to issuing such a subpoena.

Defendants have not met the procedural requirements of Rule 26(c)(1) and Local Rule 3.04(A), and have not shown good cause. As such, Plaintiff requests this Court deny Defendants' motion for protective order.

Dated: September 24, 2020                    Respectfully submitted,

8

**ArchCity Defenders, Inc.**

By:/s/ *Maureen Hanlon*
Blake A. Strode (MBE #68422MO)
Michael John Voss (MBE #61742MO)
John M. Waldron (MBE #70401MO)
Nathaniel Carroll (MBE#67988MO)
Maureen Hanlon (MBE #70990MO)
440 North Fourth Street, Suite 390
St. Louis, MO 63102
855-724-2489 ext. 1021
314-925-1307 (fax)
bstrode@archcitydefenders.org
mjvoss@archcitydefenders.org
jwaldron@archcitydefenders.org
ncarroll@archcitydefenders.org
mhanlon@archcitydefenders.org

*And*

David C. Nelson (MBE #46540MO)
Nelson and Nelson
420 N. High St.
Belleville, IL 62220
618-277-4000
314-925-1307 (fax)
dnelson@nelsonlawpc.com
*Attorneys for Plaintiff*