UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL FAULK, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:18CV308 JCH |
| CITY OF ST. LOUIS, MISSOURI, et al., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant James Wood's Motion to Dismiss Counts I, II, V, VIII, IX, X and XI of Plaintiff's Fifth Amended Complaint, filed March 30, 2020. (ECF No. 143). The motion is fully briefed and ready for disposition.

**BACKGROUND**

Taken as true for purposes of this motion, the facts alleged in Plaintiff's Fifth Amended Complaint are as follows. On September 15, 2017, the Circuit Court of the City of St. Louis issued its findings and verdict in *State of Missouri v. Stockley*, prompting some members of the public to engage in protests around the City. The protests concerned not only the verdict but broader issues, including racism in the criminal justice system and the use of force by police against African-American citizens. Although most of the protests were non-violent, St. Louis Metropolitan Police Department ("SLMPD") officers "amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields and carrying chemicals, such as tear gas, skunk, inert smoke, pepper gas, pepper pellets, xylyl bromide, and/or similar

1

substances (collectively, 'chemical agents')." (Fifth Amended Complaint ("Compl."), ¶ 31).

On September 17, 2017, Plaintiff Michael Faulk, an award-winning journalist, was reporting on the protests in downtown St. Louis. Plaintiff was using his bicycle to travel around downtown. Around 8:30 p.m., Plaintiff witnessed masked individuals break a restaurant window. He also saw several other damaged windows.

Just before 10:00 p.m., Plaintiff rode his bicycle back to the Post-Dispatch parking lot. He speculated on Twitter that perhaps the worst was over for the night. At some point thereafter, however, Plaintiff saw emergency lights flashing and officers approaching Tucker Boulevard between Olive and Washington. From Locust Street, Plaintiff tweeted "Bike cops blocking Locust and 11th #STLVerdict Spectators there and big group of people at St. Charles/Tucker." (Compl., ¶ 148). The officers began to lift their bicycles and pound them on the ground in unison, while walking west toward Plaintiff and others. Without giving any dispersal orders or warnings that chemical agents would be used, the officers ordered people to move west on Locust or north on Tucker.

Plaintiff heeded the officers' orders, and walked north on Tucker Boulevard to the intersection of Washington Avenue and Tucker. Suddenly, the riot police north of Plaintiff started to beat their batons on their shields in unison. Plaintiff sought some way to get out of the police kettle[1] that had formed, but officers ignored his questions and requests for help.

Following the lead of others gathered in the intersection, Plaintiff placed his bike on the ground and got down on his hands and knees over the bike. SLMPD officers approached

---

1 According to Plaintiff's Fifth Amended Complaint, "kettling" is a law enforcement tactic by which officers encircle a group of protestors without providing a means of egress.

individuals in the group who were kneeling or lying down, shouting "Stop Resisting" and "Get Down!" to the citizens who were, quite visibly, trying to obey whatever SLMPD officers commanded. (Compl., ¶ 160).

Approaching the group of kettled citizens on the ground, SLMPD officers began indiscriminately deploying pepper spray on the submissive crowd. Plaintiff felt the pepper spray land on his back and neck, causing immediate and acute stinging pain.

One member of the SLMPD grabbed Plaintiff as he lay on the ground, attempting to pull him up by his collar. Plaintiff shouted several times, "Post-dispatch!", and lifted his media credential ID card to show the officer. The officer let go of Plaintiff, who was now standing, but immediately thereafter, Plaintiff was pushed from behind by another officer. Plaintiff was shoved in the direction of several other SLMPD officers, who then used their riot shields to shove Plaintiff off the sidewalk and into the street. Several officers then grabbed Plaintiff from behind, using their full weight to tackle him to the ground, and one officer used his baton to try and strike Plaintiff in the genitals as several others seized each of his limbs. Further, one officer placed his boot on Plaintiff's head, and used his weight to press Plaintiff's head into the street asphalt, and another sprayed him directly in the face with pepper spray.² Plaintiff maintains that at all times, he did not resist the officers in any way.

As Plaintiff lay on the ground, defendant officers Harris and Wismar very tightly tied his hands with plastic "zip-cuffs". Defendant Wismar delivered Plaintiff to the team lining up arrestees for the transport van, and the entire SLMPD team then arrested Plaintiff.³ Plaintiff was taken to the St. Louis City Justice Center, where he was placed in a cell with approximately

---

2 Plaintiff does not identify by name the officers who pushed him, grabbed him, assaulted him and sprayed him with pepper spray.
3 Defendant Wismar is listed in the SLMPD Incident Report as the "Arresting Officer" of Plaintiff.

3

fifteen other men.  Plaintiff  attempted to continue his reporting, but when an officer learned he was a journalist, the officer removed Plaintiff and placed him in his own cell.  Plaintiff eventually was again placed in an over-capacity cell with other protest arrestees.  At no time was he given medical attention, despite requesting such on several occasions.  Plaintiff remained detained for approximately thirteen hours.

As noted above, Plaintiff claims he was not engaged in unlawful activity at any time during his encounter with police.  Plaintiff further alleges that during and after the arrests, SLMPD officers were observed high fiving each other, smoking celebratory cigars, taking "selfies" on their cell phones with arrestees against the arrestees' will, and chanting "Whose Streets? Our Streets!"   (Compl., ¶ 99).

Plaintiff filed the instant Fifth Amended Complaint on January 30, 2020, naming as Defendants the City of St. Louis, Missouri, and SLMPD officers as follows[4]: Lieutenant Colonel Gerald Leyshock; Lieutenant Scott Boyher; Lieutenant Timothy Sachs; Sergeant Randy Jemerson; Sergeant Matthew Karnowski; Sergeant Brian Rossomanno; Officer Andrew Wismar; Sergeant Anthony Wozniak; Officer John Gentilini; Officer James Harris III; Officer Brian Gonzales; Officer Robert Stuart; Officer Bryan Barton; Sergeant Tom Long; Officer James Wood; and Lieutenant Colonel Lawrence M. O'Toole.

As relevant here,  Plaintiff asserts claims for First and Fourteenth Amendment Violations against all Defendants (Count I); Fourth and Fourteenth Amendment Violations:  Unreasonable Seizure against the individual Defendants (Count II); and 42 U.S.C. § 1983 Conspiracy to Deprive Civil Rights against all Defendants (Count V).   Plaintiff further asserts supplemental state-law claims, alleging False Arrest and False Imprisonment against all Defendants (Count

---

4 All individual Defendants are sued in their individual capacities only.

4

VIII), Intentional and Negligent Infliction of Emotional Distress against all Defendants (Counts IX and X), and Conversion against Defendants Wood and the City of St. Louis (Count XI).

As noted above, Defendant Wood filed the instant Motion to Dismiss on March 30, 2020. (ECF No. 143). He moves to dismiss Counts I and II because they allegedly fail to state a claim against him, and because he is protected by qualified immunity. Defendant Wood moves to dismiss Plaintiff's § 1983 conspiracy count on the grounds that it is barred by the intracorporate conspiracy doctrine, that it fails adequately to allege specific facts supporting a claim against him for conspiracy, and that he is protected by qualified immunity. Finally, Defendant Wood argues that Plaintiff's state-law claims against him must be dismissed, because Plaintiff has failed adequately to plead facts supporting the claims, and because they are barred by the doctrine of official immunity.

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion dismiss, the Court must view the allegations in the complaint in the light most favorable to plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). The complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of

5

action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

## **DISCUSSION**

### I. Counts I and II

In his Motion to Dismiss, Defendant Wood first claims Counts I and II fail to state a claim against him, because they contain no facts from which this Court could infer personal involvement on his part in the allegedly unlawful acts. In response, Plaintiff points to specific allegations in his Fifth Amended Complaint that (1) Wood was part of the team effectuating the kettle and mass arrest that restricted Plaintiff's right to observe and report on police behavior, and (2) Wood assisted the team effectuating the mass arrest by collecting evidence.

Upon consideration of the foregoing, the Court finds it inappropriate to dismiss Counts I and II against Defendant Wood at this time. Instead, the Court will permit Plaintiff to engage in discovery on his claims. Defendant Wood remains free to renew his arguments on summary judgment, when the Court will have before it a full record.

### II. Civil Conspiracy Claim

"To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citation omitted). The first element "requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators." *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010) (citations omitted). "The plaintiff is additionally required to prove a deprivation of a

constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *White*, 519 F.3d at 814 (citation omitted).

Defendant Wood first asserts Plaintiff's conspiracy claim must be dismissed because his allegations are conclusory, and merely comprise a formulaic recitation of the elements of conspiracy. Accepting Plaintiff's allegations as true, however, the Court finds he sufficiently has pled the claim. For example, Plaintiff alleges Defendants Leyshock, Sachs, Jemerson and Rossomanno conspired to design and implement the illegal kettling plan, with the intent unlawfully to arrest and use excessive force against the protestors, including Plaintiff. (Compl., ¶ 253). Plaintiff further alleges Defendants Boyher and Karnowski joined the conspiracy when they directed officers under their control and supervision to execute the illegal kettling plan, and Defendants Long, Wozniak, Wismar, Gentilini, Stuart, Harris, Gonzales, Barton, and Wood joined the conspiracy when they agreed to participate in the illegal kettling plan, and then unlawfully arrested and used excessive force on Plaintiff. (*Id.*, ¶¶ 254, 255). Finally, Plaintiff alleges he suffered injury, as he was surrounded by police, tackled, struck with a baton, and pepper sprayed in the face. (*Id.*, ¶¶ 155-166). Under these circumstances, the Court declines to dismiss Plaintiff's conspiracy claim at this time.

The Court further finds Defendant Wood is not entitled to qualified immunity with respect to Count V of Plaintiff's Fifth Amended Complaint. "The doctrine of qualified immunity shields government officials from civil liability if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McCaslin v. Wilkins*, 183 F.3d 775, 778 (8th Cir. 1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts employ a two-part inquiry to determine whether a lawsuit can continue in the face of a claim of qualified immunity. They consider:

> (1) whether the facts that a plaintiff has alleged or shown, when viewed in the light most favorable to plaintiff, support a finding that the conduct of defendants violated a constitutional right and (2) whether that constitutional right was "clearly established" such that a reasonable official would have known that his or her actions were unlawful.

*Bailey v. Calvin*, No. 4:11CV414 DDN, 2012 WL 4092456, at *2 (E.D. Mo. Sept. 17, 2012) (citation omitted). "To be clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Weaver v. Clarke*, 45 F.3d 1253, 1256 (8th Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640 (internal citations omitted). Furthermore, "[b]ecause qualified immunity is an affirmative defense, it will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Weaver*, 45 F.3d at 1255 (internal citations omitted).

Upon consideration, the Court finds Plaintiff has pled facts to establish constitutional violations on the part of Defendant Wood, sufficient to survive the instant Motion to Dismiss. As noted above, Plaintiff alleges Defendant Wood participated in the unlawful kettling plan. (Compl., ¶¶ 255). With this allegation, Plaintiff adequately alleges Defendant Wood's direct involvement in the constitutional violations, as he alleges specific facts describing said Defendant's role in executing the illegal actions.[5]

Defendant Wood finally challenges Plaintiff's § 1983 conspiracy claim on the basis that it is barred by the intracorporate conspiracy doctrine. The cases relied upon by Defendant Wood involved conspiracy claims under 42 U.S.C. § 1985, however. *See Kelly v. City of Omaha, Neb.*,

---

5 Upon consideration, the Court readily concludes the constitutional rights allegedly violated were clearly established at the time of the events at issue.

813 F.3d 1070, 1078 (8th Cir. 2016).  The Eighth Circuit has not addressed whether the doctrine applies to § 1983 conspiracy claims, and in the absence of such direction from the Eighth Circuit, the judges in this District—including in another *Stockley* protest case—have consistently declined to extend the doctrine's reach, at least at the pleading stage.  *See Aldridge v. City of St. Louis, Mo.*, No. 4:18CV1677 CAS, 2019 WL 1695982, at *8 (E.D. Mo. Apr. 17, 2019) (collecting cases).  Here, too, the Court finds that it is inappropriate to apply the intracorporate conspiracy doctrine at this stage.  As such, Defendant's Motion to Dismiss Plaintiff's § 1983 conspiracy claim will be denied.

### III. Official Immunity

"Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions, but not from liability in claims arising from their performance of ministerial acts."  *Reasonover v. St. Louis Cty., Mo.*, 447 F.3d 569, 585 (8th Cir. 2006) (citation omitted).  "[A] police officer's decision to use force in the performance of his duties is discretionary rather than ministerial."  *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) (citation omitted).

"[O]fficial immunity does not apply to discretionary acts done in bad faith or with malice", however.  *Davis*, 794 F.3d at 1013 (internal quotation marks and citations omitted).  "Acting with malice requires an 'actual intent to cause injury.'"  *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017) (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986)).  "A finding of bad faith embraces more than bad judgment or negligence.  It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive."  *Id.* (internal quotation marks and citations omitted).

9

At this early stage, Plaintiff's allegations state facts from which it reasonably could be inferred that Defendant Wood acted in bad faith or with malice by participating in the kettling and arrest of Plaintiff, who was not engaged in any unlawful activity, while officers chanted and taunted Plaintiff and others. *See Aldridge*, 2019 WL 1695982, at *14; *Laney v. City of St. Louis, Mo.*, No. 4:18CV1575 CDP, 2019 WL 2423308, at *8 (E.D. Mo. Jun. 10, 2019). The Court therefore will deny Defendant Wood's motion to the extent that it is based on official immunity.[6]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant James Wood's Motion to Dismiss Counts I, II, V, VIII, IX, X and XI of Plaintiff's Fifth Amended Complaint (ECF No. 143) is **DENIED**.

Dated this 5th Day of January, 2021.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

6 Upon consideration, the Court further will deny Defendant Wood's Motion to Dismiss on the basis that Plaintiff has failed adequately to plead the elements of his state-law claims with respect to said Defendant in Counts VIII-XI. While the allegations against Defendant Wood are sparse, the Court will permit discovery on the issues rather than dismiss the claims at this time. Again, Defendant Wood remains free to renew his arguments on summary judgment.