UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL FAULK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:18CV308 JCH |
| | ) |
| CITY OF ST. LOUIS, MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Lt. Col. Lawrence O'Toole's Motion to Dismiss Counts I, II, V, VIII, IX, X and XII of Plaintiff's Fifth Amended Complaint, filed March 30, 2020. (ECF No. 148). The motion is fully briefed and ready for disposition.

**BACKGROUND**

Taken as true for purposes of this motion, the facts alleged in Plaintiff's Fifth Amended Complaint are as follows. On September 15, 2017, the Circuit Court of the City of St. Louis issued its findings and verdict in *State of Missouri v. Stockley*, prompting some members of the public to engage in protests around the City. The protests concerned not only the verdict but broader issues, including racism in the criminal justice system and the use of force by police against African-American citizens. Although most of the protests were non-violent, St. Louis Metropolitan Police Department ("SLMPD") officers "amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields and carrying chemicals, such as tear gas, skunk, inert smoke, pepper gas, pepper pellets, xylyl bromide, and/or similar

substances (collectively, 'chemical agents').") (Fifth Amended Complaint ("Compl."), ¶ 31).

On September 17, 2017, Plaintiff Michael Faulk, an award-winning journalist, was reporting on the protests in downtown St. Louis. Plaintiff was using his bicycle to travel around downtown. Around 8:30 p.m., Plaintiff witnessed masked individuals break a restaurant window. He also saw several other damaged windows.

Just before 10:00 p.m., Plaintiff rode his bicycle back to the Post-Dispatch parking lot. He speculated on Twitter that perhaps the worst was over for the night. At some point thereafter, however, Plaintiff saw emergency lights flashing and officers approaching Tucker Boulevard between Olive and Washington. From Locust Street, Plaintiff tweeted "Bike cops blocking Locust and 11th #STLVerdict Spectators there and big group of people at St. Charles/Tucker." (Compl., ¶ 148). The officers began to lift their bicycles and pound them on the ground in unison, while walking west toward Plaintiff and others. Without giving any dispersal orders or warnings that chemical agents would be used, the officers ordered people to move west on Locust or north on Tucker.

Plaintiff heeded the officers' orders, and walked north on Tucker Boulevard to the intersection of Washington Avenue and Tucker. Suddenly, the riot police north of Plaintiff started to beat their batons on their shields in unison. Plaintiff sought some way to get out of the police kettle[1] that had formed, but officers ignored his questions and requests for help.

Following the lead of others gathered in the intersection, Plaintiff placed his bike on the ground and got down on his hands and knees over the bike. SLMPD officers approached individuals in the group who were kneeling or lying down, shouting "Stop Resisting" and "Get

---

1 According to Plaintiff's Fifth Amended Complaint, "kettling" is a law enforcement tactic by which officers encircle a group of protestors without providing a means of egress.

Down!" to the citizens who were, quite visibly, trying to obey whatever SLMPD officers commanded. (Compl., ¶ 160).

Approaching the group of kettled citizens on the ground, SLMPD officers began indiscriminately deploying pepper spray on the submissive crowd. Plaintiff felt the pepper spray land on his back and neck, causing immediate and acute stinging pain.

One member of the SLMPD grabbed Plaintiff as he lay on the ground, attempting to pull him up by his collar. Plaintiff shouted several times, "Post-dispatch!", and lifted his media credential ID card to show the officer. The officer let go of Plaintiff, who was now standing, but immediately thereafter Plaintiff was pushed from behind by another officer. Plaintiff was shoved in the direction of several other SLMPD officers, who then used their riot shields to shove Plaintiff off the sidewalk and into the street. Several officers then grabbed Plaintiff from behind, using their full weight to tackle him to the ground, and one officer used his baton to try and strike Plaintiff in the genitals as several others seized each of his limbs. Further, one officer placed his boot on Plaintiff's head, and used his weight to press Plaintiff's head into the street asphalt, and another sprayed him directly in the face with pepper spray.[2] Plaintiff maintains that at all times, he did not resist the officers in any way.

As Plaintiff lay on the ground, defendant officers Harris and Wismar very tightly tied his hands with plastic "zip-cuffs". Defendant Wismar delivered Plaintiff to the team lining up arrestees for the transport van, and the entire SLMPD team then arrested Plaintiff.[3] Plaintiff was taken to the St. Louis City Justice Center, where he was placed in a cell with approximately fifteen other men. Plaintiff attempted to continue his reporting, but when an officer learned he

---

2 For the most part, Plaintiff does not identify by name the officers who pushed him, grabbed him, assaulted him and sprayed him with pepper spray.
3 Defendant Wismar is listed in the SLMPD Incident Report as the "Arresting Officer" of Plaintiff.

3

was a journalist, the officer removed Plaintiff and placed him in his own cell. Plaintiff eventually was again placed in an over-capacity cell with other protest arrestees. At no time was he given medical attention, despite requesting such on several occasions. Plaintiff remained detained for approximately thirteen hours.

As noted above, Plaintiff claims he was not engaged in unlawful activity at any time during his encounter with police. Plaintiff further alleges that during and after the arrests, SLMPD officers were observed high fiving each other, smoking celebratory cigars, taking "selfies" on their cell phones with arrestees against the arrestees' will, and chanting "Whose Streets? Our Streets!" (Compl., ¶ 99).

Plaintiff filed the instant Fifth Amended Complaint on January 30, 2020, naming as Defendants the City of St. Louis, Missouri, and SLMPD officers as follows[4]: Lieutenant Colonel Gerald Leyshock; Lieutenant Scott Boyher; Lieutenant Timothy Sachs; Sergeant Randy Jemerson; Sergeant Mathew Karnowski; Sergeant Brian Rossomanno; Officer Andrew Wismar; Sergeant Anthony Wozniak; Officer John Gentilini; Officer James Harris III; Officer Brian Gonzales; Officer Robert Stuart; Officer Bryan Barton; Sergeant Tom Long; Officer James Wood; and Lieutenant Colonel Lawrence M. O'Toole.

As relevant here, Plaintiff asserts claims for First and Fourteenth Amendment Violations against all Defendants (Count I); Fourth and Fourteenth Amendment Violations: Unreasonable Seizure against the individual Defendants (Count II); and 42 U.S.C. § 1983 Conspiracy to Deprive Civil Rights against all Defendants (Count V).[5] Plaintiff further asserts supplemental state-law claims, alleging False Arrest and False Imprisonment against all Defendants (Count

---

[4] All individual Defendants are sued in their individual capacities only.
[5] In an Order entered June 6, 2022, Count V of Plaintiff's Fifth Amended Complaint was dismissed. (ECF No. 211).

VIII), Intentional and Negligent Infliction of Emotional Distress against all Defendants (Counts IX and X), and Vicarious Liability under City Charter against Defendant O'Toole (Count XII).

As noted above, Defendant O'Toole ("Defendant" or "O'Toole") filed the instant Motion to Dismiss on March 30, 2020. (ECF No. 148). He moves to dismiss Counts I and II because they allegedly fail to state a claim against him, and because he is protected by qualified immunity. Defendant moves to dismiss Plaintiff's state-law claims against him because Plaintiff has failed adequately to plead facts supporting the claims, and because they are barred by the doctrine of official immunity. Finally, Defendant moves to dismiss Plaintiff's vicarious liability claim against him for failure to state a claim upon which relief may be granted.

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion dismiss, the Court must view the allegations in the complaint in the light most favorable to plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). The complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct.

1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

## DISCUSSION

I. Counts I and II

As noted above, O'Toole moves to dismiss Counts I and II because they fail to state a claim against him, and because he is protected by qualified immunity.  Specifically, he asserts that unlike the allegations directed at other supervisory defendants, Plaintiff does not allege that O'Toole had any role in the illegal kettling plan, approving Plaintiff's arrest or any other illegal conduct.  Defendant maintains he cannot be held vicariously liable for the actions of his subordinates.

The doctrine of respondeat superior does not apply in § 1983 cases.  *Beaulieu v. Ludeman*, 690 F.3d 1017, 1030 (8th Cir. 2012).  A supervisor may still be individually liable under § 1983, however, "(1) if the supervisor directly participated in the constitutional violation; (2) if the supervisor failed or refused to intervene when a constitutional violation took place in his presence; (3) if the supervisor's failure to train or supervise the employee caused the constitutional violation; or (4) if the supervisor created a policy or custom under which the constitutional violation occurred."  *B.J.G. ex rel. McCray v. St. Charles Cty. Sheriff*, No. 4:08CV1178 CDP, 2010 WL 1838414, at *3 (E.D. Mo. May 6, 2010) (citations omitted), aff'd sub nom. *B.J.G. ex rel. McCray v. St. Charles Cty. Sheriff*, 400 F'Appx 127 (8th Cir. 2010). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 761 (8th Cir. 2003) (internal quotation marks and citations omitted).

Counts I and II incorporate by reference all allegations in the preceding paragraphs of the Fifth Amended Complaint. Only two of those paragraphs reference O'Toole, as follows:

> 27. Lieutenant Colonel Lawrence M. O'Toole was employed as the Acting Commissioner of the SLMPD on September 17, 2017….
>
> 104. The next day, the SLMPD Acting Chief reinforced the City's ratification of the Defendants' actions when he said, "I'm proud to say the city of St. Louis and the police owned the night," while standing next to St. Louis Mayor Lyda Krewson.

(Compl., ¶¶ 27, 104).

Upon consideration, the Court finds these allegations insufficient to establish plausible causes of action against O'Toole in Counts I or II. Plaintiff's Fifth Amended Complaint contains no allegations that O'Toole participated in the alleged violations of Plaintiff's First or Fourth Amendment rights, or failed or refused to intervene when a constitutional violation took place in his presence. Further, the Court disagrees with Plaintiff's assertion that O'Toole's only asserted statement, made after the events at issue, demonstrated "both his ownership over the decisions made that night, including the decision to conduct the mass arrest, and also his role in supervising." (*See* Plaintiff Faulk's Memorandum in Opposition to Defendant O'Toole's Motion to Dismiss, P. 5). Defendant's Motion to Dismiss Counts I and II of Plaintiff's Fifth Amended Complaint as they pertain to him will therefore be granted.

II.  Counts VIII, IX and X

Defendant next asserts Plaintiff's state-law claims against him must be dismissed because Plaintiff has failed adequately to plead facts supporting the claims, and because they are barred by the doctrine of official immunity. "Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions, but not from liability in claims arising from their performance of ministerial acts." *Reasonover v.*

7

*St. Louis Cty., Mo.*, 447 F.3d 569, 585 (8th Cir. 2006) (citation omitted). "[O]fficial immunity does not apply to discretionary acts done in bad faith or with malice", however. *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) (internal quotation marks and citations omitted). "Acting with malice requires an 'actual intent to cause injury.'" *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017) (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986)). "A finding of bad faith embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive." *Id.* (internal quotation marks and citations omitted).

As noted above, the only allegations against O'Toole are that he was employed as the Acting Commissioner of the SLMPD during the relevant time frame, and that he reinforced the City's ratification of other Defendants' actions. Without deciding whether Plaintiff sufficiently asserts causes of action for false arrest/false imprisonment, intentional infliction of emotional distress and/or negligent infliction of emotional distress in the first instance, the Court finds Plaintiff's allegations fail to state facts from which it reasonably could be inferred that O'Toole acted in bad faith or with malice. Defendant's Motion to Dismiss Counts VIII, IX and X as they pertain to him will therefore be granted.

III.    Count XII

In Count XII Plaintiff asserts a novel theory of liability, that O'Toole is vicariously liable under the City's Charter. According to Plaintiff, Article VIII, Section 5 of the Charter states, "[e]ach head of a department, office or division shall be responsible for the acts or omissions of officers and employees appointed by him, and may require bonds or other securities from them to secure himself." (Compl., ¶ 326). Plaintiff alleges O'Toole was the Acting Commissioner of the SLMPD on the date in question, and because the defendant officers were officers and employees

8

of the Chief of Police and acting in the scope of their employment when they committed the acts alleged in the Fifth Amended Complaint, O'Toole is vicariously liable for said acts and omissions.  (*Id.*, ¶¶ 327-331).  O'Toole asks that the Court decline supplemental jurisdiction, as Judges in similar cases have done.

Under 28 U.S.C. § 1367(c)(1), the Court may decline supplemental jurisdiction over a claim that raises a novel or complex issue of State law.  Upon consideration, the undersigned agrees that supplemental jurisdiction should be declined with regard to this novel and complex issue of State law.  The Court therefore will dismiss Count XII without prejudice.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Lt. Col. Lawrence O'Toole's Motion to Dismiss Counts I, II, V, VIII, IX, X and XII of Plaintiff's Fifth Amended Complaint (ECF No. 148) is **GRANTED**.

**IT IS FURTHER ORDERED** that Count XII of Plaintiff's Fifth Amended Complaint is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Lt. Col. Lawrence O'Toole is **DISMISSED** as a Defendant in this matter.


Dated this ___27th___ Day of July, 2022.


\s\ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE